WALENTYNA JASINSKI *vs.* KAZIMIERA STANKOWSKI ET AL.

*Constructive Trust—Parol Agreement—Fraud.*

On a conveyance of property, fraudulently procured by the grantee upon the faith of a parol trust agreement which she subsequently repudiates, a trust arises "by implication or construction of law," within the meaning of the eighth section of the Statute of Frauds, excepting trusts so arising from the requirement of the seventh section that the creation of a trust in land shall be proved by a signed writing.          pp. **61-64**

That one, to whom real property was conveyed on a parol trust, herself suggested the conveyance to her, and promised that she would return the property to the beneficiaries named, her stepchildren, to whom it had been dedicated by her husband and their deceased mother, justified the conclusion that such grantee, who thereafter refused to comply with her promise, entered into the transaction with a fraudulent purpose, with the result that a constructive trust arose in favor of the children.                                   pp. 64, 65

The court declaring a constructive trust in favor of plaintiffs in property conveyed to defendant, a decree for an accounting, with equitable credits to the defendant, and requiring the eventual conveyance of the property to the plaintiffs in pursuance of the trust declared, *held* within the proper scope of the general relief to which the bill of complaint was directed.  p. 65

*Decided February 1st, 1924.*

Appeal from the Circuit Court of Baltimore City (Heuisler, J.).

Bill by Kazimiera Stankowski and others against Walentyna Jasinski. From a decree for plaintiffs, defendant appeals. Affirmed.

The cause was argued before Briscoe, Thomas, Urner, Stockbridge, Adkins, and Offutt, JJ.

*William H. Surratt* and *Paul R. Hassenkamp,* for the appellant.

*J. Cookman Boyd,* with whom was *Thomas E. Mason* on the brief, for the appellees.

Urner, J., delivered the opinion of the Court.

By deed dated January 5th, 1917, Joseph Jasinski and wife conveyed to their daughter, Kazimiera Stankowski, and her husband, certain real property on Gough Street, in the City of Baltimore. The title conveyed had been held by the grantors as tenants by the entireties, and the deed vested a similar estate in the grantees. The conveyance was made, as the bill of complaint avers, in anticipation of the decease

of Mrs. Jasinski, who was then in her last illness, and for the purpose of safeguarding the interests of her children in the event of her husband's remarriage. It is alleged to have been the understanding, on which the deed was executed and delivered, that the children of the grantors should have equal interests in the property. Shortly after the execution of the deed Mrs. Jasinski died, and subsequently her husband remarried. On July 13th, 1918, the daughter, Kasimiera Stanskowski, and her husband, conveyed the property to her father's second wife, Walentyna Jasinski. The bill charges that Mrs. Stanskowski and her husband were fraudulently induced to make the conveyance to the stepmother upon her promise to hold the property in trust for the benefit of the children of her husband by his first wife. Because of the repudiation of the alleged trust by the grantee after her husband's death, his children have instituted this proceeding to have the deed to her annulled, to restrain her from disposing of the property, and to require her to account for the rents which she has received since she acquired the title. The answer denies the allegation of fraud and states that the conveyance to the defendant, which is sought to be invalidated, was made for a valuable consideration. The trial of the case resulted in a decree declaring the existence, and enforcing the terms, of the trust described in the bill of complaint.

The proof is convincing that the property in question was conveyed to the defendant under a definite parol agreement that she was to hold it for equal division, after her husband's death, among the plaintiffs as his children. Her own repeated declarations to that effect have been so strongly proved by numerous witnesses as to prevent the acceptance of her denial. It appears from the testimony that she was aware of the conditions under which the title had been transferred by her husband and his former wife to their daughter and son-in-law. One of the witnesses testified that the defendant herself explained the disposition of the title as follows: "That the first wife, Mrs. Jasinski, being ill

and fearing the approach of death, and also fearing in a way—she said she anticipated the old man would get married, and they had decided, in order to protect the property and secure it to the children, to transfer the property to the name of the oldest daughter; thereupon trouble arising between the oldest daughter and her husband, * * * and disruption of the marriage being threatened, there was some apprehension as to what would happen to the property because of that relation of the daughter to the husband; it was thereupon decided, in order to again protect the property and secure for the benefit of the children, that it be transferred to her, Mrs. Walentyna Jasinski."

When the property was conveyed to the defendant in 1918 it was worth $7,500, according to the estimate of a real estate expert called by the plaintiffs; but one produced by the defendants valued it at only $4,200. Both testified that there has since been a substantial increase in its value. The conveyance to the defendant was subject to a mortgage on which there was due a balance of approximately $2,300. Mr. Stanskowski, the son-in-law, had paid $500 for taxes in arrears and certain expenses, when the deed to his wife and himself from Mr. Jasinski and his first wife was executed, and that amount was repaid to him by the defendant when she received the deed now in controversy. She claims to have paid an additional sum of $500 to the grantors at that time, but this is disputed. In either event, it is evident that the amount paid by the defendant was much less than the value of the property subject to the mortgage. Her purpose to retain it is in direct opposition to the agreement upon the faith of which the title appears to have been placed in her name. The principal ground of defense is the Statute of Frauds, and the question to be decided is whether that statute prevents the enforcement of the parol trust which has been proved.

It is provided by the seventh section of the Statute of Frauds that "all declarations or creations of trusts and confidence, of any lands, tenements or hereditaments, shall be

manifested and proved by some writing signed by the party who is by law enabled to declare such trust, or by his last will in writing, or else they shall be utterly void and of none effect." The eighth section provides that "where any conveyance shall be made of any lands or tenements by which a trust or confidence shall or may arise or result by the implication or construction of law, or be transferred or extinguished by an act or operation of law, then in every such case, such trust or confidence shall be of the like force and effect as the same would have if this statute had not been made; anything hereinbefore contained to the contrary notwithstanding."

It is clear that the seventh section of the statute would be a bar to the enforcement of the trust here asserted, if it were sought to be enforced merely by virtue of an agreement which is not "proved by some writing." But whether, under the conditions shown in the case, a trust exists by construction of law, within the purview of the eighth section of the statute, is the question to be determined.

Among the cases in which trusts are held to arise by construction of law are those where the conveyance of property is fraudulently procured by the grantee upon the faith of a parol trust agreement which is subsequently repudiated. Upon the just principle that the perpetrator of such a fraud will not be permitted to profit by his own wrong, the law creates a trust by implication for the protection of the rights which would otherwise be defeated. The principle is thus stated in 26 *R. C. L.,* 1233, as follows: "While the Statute of Frauds requires a writing to create an express trust in real property, it has no application to cases where the law raises a constructive trust by reason of the fraudulent acts and purposes in procuring title to the land. The rule in equity always has been that the statute is not allowed to operate as a protection for a fraud, or as a means of seducing the unwary into a false confidence, whereby their intentions are betrayed, and parol trusts in real estate have been frequently established in direct contradiction of the statute

on the ground of fraud.   Constructive trusts are held not within the statute because they rest in the end on the doctrine of estoppel, and the operation of an estoppel is never affected by the Statute of Frauds."   In 39 *Cyc.* 178, it is said: "The mere violation of a parol promise made by the grantee to the grantor to hold land in trust or for a certain purpose, or to convey it to a person designated by the grantor, does not create a constructive trust in the grantee in the absence of fraud in procuring the conveyance; but such a trust will arise when, in addition to the breach of the parol agreement, there is some element of fraud or bad faith which makes it inequitable that the person committing the fraud or acting in bad faith should hold the legal title absolutely and discharged of any trust."   Numerous cases are cited in 26 *R. C. L.* and 39 *Cyc.* in support, respectively, of the statements we have quoted.

In *Coyne* v. *Supreme Conclave,* 106 Md. 57, JUDGE BURKE said:

"There is also a class of trusts which arise *ex maleficio,* and equity, in order to reach the possessor of what in conscience belongs to another, turns him into a trustee.   'Thus, if a man in confidence of the parol promise of another to perform an intended act, should omit to make certain provisions, gifts or arrangements, by will, or otherwise, such a promise would be specifically enforced in equity, although founded on a parol declaration creating a trust contrary to the Statute of Frauds, for it would be a fraud upon all other parties to permit him to derive a benefit from his own breach of duty and obligation.' "   *Story, Eq. Juris.,* sec. 781 (13th Ed.).

This language was quoted in the opinion delivered in *Ruhe* v. *Ruhe,* 113 Md. 601, and the principle was stated in *Suman* v. *Harvey,* 114 Md. 256, and *Clark* v. *Clark,* 139 Md. 42, and in the very recent case of *Springer* v. *Springer,* 144 Md. 465, where a constructive trust on the ground of fraud was enforced as to property which a son of the plaintiffs was retaining in violation of the understanding upon which the title was placed in his name.

In *Wiley* v. *Wiley,* 115 Md. 655, we used the following passage from the opinion in *Anthony* v. *Leftwich,* 3 Rand. (Va.) 259, as quoted in *Green* v. *Drummond,* 31 Md. 83: "The Statute of Frauds was intended to protect parties against feigned or incomplete agreements. But when one party induces another, on the faith of a parol contract, to place himself in a worse situation than he would have been if no agreement existed, and especially if the former derives a benefit therefrom, at the expense of the latter, and avails himself of his legal advantage, he is guilty of a fraud, and uses the statute for a purpose not intended, the injury of another, for his own profit. The fraud does not consist in availing himself of the statute to protect himself, but in using it to appropriate to himself what justly belongs to another."

It is contended that if the making and violation by the defendant of the alleged parol trust agreement be assumed, there is no proof that she entered into it with any fraudulent purpose, and therefore the theory of a trust by construction of law cannot be sustained. Upon the evidence in the record we are unable to adopt that view. The wrong has been committed under a conveyance which the defendant herself appears to have proposed. It was testified by the stepdaughter who, with her husband, previously held the title, that the defendant suggested the transfer of the property to herself, because of the grantors' domestic troubles, and promised that she would convey it to the plaintiffs after the death of their father, whom she had recently married. This was contradicted by the defendant, but the declarations which are proved by other witnesses to have been made by her after the conveyance are so thoroughly consistent with the stepdaughter's statement that we are justified in accepting it as true. The active part which the defendant is thus shown to have had in the transfer to her of the property which she seeks to retain, contrary to the agreement, is a circumstance to be considered upon the question as to the inception of the wrongful purpose.

In the course of a full note in 39 *L. R. A.* (N. S.) 911, summarizing cases which involve questions analogous to the one here presented, it is said: "To avoid the injustice arising from the repudiation of a parol trust, courts of equity have frequently seized upon the slightest circumstances connected with the procurement of the conveyance to avoid the operation of the Statute of Frauds," and "Perhaps the most satisfactory inference of a fraudulent intent on the part of a grantee is to be derived from his activity in procuring the conveyance; and in the instances hereinafter detailed in which equity has compelled the performance of the promise, it will be found that the grantee made some representation, or otherwise took an active part in inducing the grantor to convey." The cases to which the note makes that reference are: *Smith* v. *Smith,* 153 Ala. 504, 45 So. 168; *Fishbeck* v. *Gross,* 112 Ill. 208; *Williams* v. *Williams,* 180 Ill. 361, 54 N. E. 229; *Hansen* v. *Berthelsen,* 19 Neb. 433, 27 N. W. 423; *Blount* v. *Carroway,* 67 N. C. 396; *Booth* v. *Turle,* L. R. 16 Eq. 183, 21 Week. Rep. 721; and *Catalini* v. *Catalini,* 124 Ind. 54, 19 Am. St. Rep. 73, 24 N. E. 375.

The evidence in this record presents a case which makes a strong and rightful claim for equitable relief. The property which the defendant holds, against her agreement, was to her knowledge dedicated by her husband and his first wife to the plaintiffs as their children, and the testimony shows that it was conveyed to the defendant at her suggestion in order that the purpose of the plaintiffs' parents as to its disposition for their benefit might be more surely accomplished. There is sufficient ground in the proof upon which to declare the existence of a constructive trust in favor of the plaintiffs as to the property in litigation, and we concur in the conclusion of the lower court to that effect. The decree is within the proper scope of the general relief to which the bill of complaint is directed. It provides for an accounting, with equitable credits to the defendant, and it requires the eventual conveyance of the property to the plaintiffs in pursuance of the trust which it declares.

*Decree affirmed, with costs.*