BRUNSON *et al. v.* GLADISH *et al.*

(*Nashville,* December Term, 1938)

Opinion filed March 4, 1939.

H. D. DERRICK and F. F. LOCKE, both of Lawrenceburg, and J. L. JONES, of Pulaski, for appellants.

THOS. H. PEEBLES, of Columbia, EXBY, MORIARTY & PIERCE, of Memphis, W. H. MITCHELL, of Florence, Ala., and BENNETT ESLICK and D. R. WADE, JR., both of Pulaski, for appellees.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

W. B. Smithson died September 12th, 1924, leaving a holographic will, whereby he bequeathed and devised to his wife his entire estate, real and personal, to hold absolutely, ''as her sole and separate estate, free from the marital rights of any husband she may hereafter have, with full power to manage, control and dispose of in any manner she may see fit, by deed or will, or other-wise, at all times as if she were an unmarried woman, without the concurrence of any husband she may hereafter have, and without the consent of any husband she may hereafter have.''

This will was executed October 29th, 1915. In 1924, shortly before his death, the testator, in the presence of his wife, his former law partner, and the Clerk and Master of the Chancery Court, who was also a friend of his, stated that he had given his entire estate to his wife, "in order to avoid complications and in order that she might not be hampered; that he wanted her amply provided for." He then had the will read by Mr. Lee, his former partner, in the presence of his wife, and after it had been read he made the statement that he and his wife had agreed that she, after his death, would give to his brother $1,000, and that she would execute her will, devising one-half of what was left of his estate at her death to her nieces and nephews and the other one-half to his nieces and nephews, with the exception of one nephew, John Gladish. Mrs. Smithson promised her husband that she would do as he had stated and he then asked his friend, the Clerk and Master, to take the instrument to the office of the Clerk and Master and put it in the safe. Later, and about ten days before his death, Mr. Smithson had the will again brought to his home and had it read over to his wife, and again stated that he wanted it understood that she would execute her will and make the gift to his brother, as stated on the previous occasion, and she again agreed to do so. Thereupon, he directed that the will be delivered to Mrs. Smithson, and it was duly probated, after his death. Mr. Smithson and his wife had never had any children and their respective nieces and nephews appear to have been their next of kin and heirs at law.

After her husband's death, Mrs. Smithson stated on several occasions, in response to suggestions from Mr. Lee, her husband's former law partner, that she would

execute a will as agreed, but she never did so; and upon her death, intestate, her nephews and nieces claimed the entire estate left by her which she had received under her husband's will. The husband's nephews and nieces filed the bill in this cause against the administrators and the nephews and nieces of Mrs. Smithson to set up a parol trust, based on the agreement hereinbefore recited, in one-half the property remaining undisposed of at the death of Mrs. Smithson, which she had received under her husband's will.

The Chancellor sustained the bill and granted the relief sought, but the Court of Appeals reversed and dismissed the bill on the ground that parol evidence was inadmissible to establish the alleged trust, because it would be contradictory of the express provisions of the will. This Court granted *certiorari* and argument has been heard.

The Court of Appeals based its holding on the case of *Mee* v. *Mee*, 113 Tenn., 453, 82 S. W., 830, 831, 106 Am. St. Rep., 865, in which it was held that parol evidence was inadmissible to establish an agreement made prior to or contemporaneously with the execution of a written instrument which would vary or contradict the express provisions of the writing.

In that case C. A. Mee had executed a deed whereby he conveyed to his wife a certain tract of land, the deed providing that the wife was "authorized and empowered to sell, to dispose of and convey, any or all of said property by sale or by will, or otherwise, as she may see fit to do, and for such purposes as she may deem best." The complainants sought to prove that when the deed was made the grantor intended that the property should be held by his wife in trust for the benefit of his nephews,

the complainants, and that there was an agreement upon her part that upon his death she would convey the property to the complainants. In its opinion this Court said that the Court of Chancery Appeals had not found that anything was said at the time of the execution of the deed ''expressing a desire to impress a trust upon the property,'' but the decision of the Court of Chancery Appeals sustaining a trust in favor of the complainants was based on statements made by Mrs. Mee after her husband's death, to the effect that she intended to convey the property to the complainants in obedience to the known wish of her husband. This Court said that such expression of intention was not sufficient to constitute the defendant a trustee for the benefit of the complainants, but that it was ''wholly consistent with the view that she was exercising her own discretion as to making such conveyance.''

The *Mee Case* seems to be distinguishable from the instant case in several particulars:

The trust sought to be established in the instant case does not, when carefully considered, conflict with the express provisions of the will. The evidence offered to establish the trust, as found by the Court of Appeals, is that the testator intended to give everything to his wife to avoid complication and in order that she might not be hampered and because he wanted her amply provided for; and for this reason she was given absolute control of the estate to dispose of as she might see fit. If she needed the entire estate for her maintenance and support she had the right to use and appropriate it under the terms of the will, and such was her husband's intention. But the value of the estate, as found by the Court of Appeals, was about $65,000, and at the time of the

making of the trust agreement in 1924, the wife must have been well along in years, having been married in 1881, and it was not at all probable that she would consume the entire *corpus* of the estate, in addition to the income thereof, in providing for her own maintenance during the remainder of her life. An agreement by her, therefore, that she would dispose in a certain way of that part of the estate which she did not need and consume during her lifetime, does not necessarily conflict with the provisions of the will giving her the absolute title to the estate and the unrestricted right during her life time to use and dispose of it as she pleased. A will giving the wife of the testator the use of the entire estate during her life and the right, in the exercise of her judgment, to convert to her own use so much of the estate as might be necessary for her support, is not inconsistent with the provision that whatever may remain of the estate at the death of the wife shall belong to the estate of the testator. *Emert* v. *Blair,* 121 Tenn., 240, 118 S. W., 685; *Magevney* v. *Karsch,* 167 Tenn., 32, 54, 65 S. W. (2d), 562, 92 A. L. R., 343.

Therefore, the parol evidence explaining the reason for the provisions of the will, and the agreement with respect to the portion of the estate not used or disposed of by the widow, does not contradict the will itself; and, if it is admissible, it unquestionably establishes a trust in the estate for the benefit of the complainants. In the language of the Delaware Court quoted in the opinion in the *Mee Case,* at page 462, 82 S. W., at page 832:

"The effort of complainant is not to contradict or to impair the legal operation of the deed to Livingston, but rather to charge him, as the legal owner under the deed, with a trust arising out of an agreement dehors the deed

touching its object and the uses of the estate conveyed.''
*Hall* v. *Livingston*, 3 Del. Ch., 348, 375.

It is true the will gives the widow ''full power'' to dispose of the property of the estate ''by deed or will, or otherwise, at all times as if she were an unmarried woman, without the concurrence of any husband''; and it might be said that the power to make disposition by will ''as she may see fit'' is inconsistent with an agreement to dispose of it by will in a certain designated way. But in the first place, it is very uncertain whether this particular provision had any other purpose, or effect, than to enable the widow to dispose of the estate without the concurrence of any subsequent husband; and in the second place, if the evidence makes it clear that the real purpose of the testator was to give the widow the unlimited right to use the estate only so far as needed for her maintenance and support, the power to dispose of it by will would not vest her with any additional interest in the estate; and, if the power was not executed, the remainder of the estate, after the widow's death, would descend to the heirs at law of the testator. *McKnight* v. *McKnight*, 120 Tenn., 431, 115 S. W., 134.

Another clear distinction between the *Mee Case* and that now before us is that the contention asserted in the bill in that case was that the agreement of the grantee to convey to the complainants was made at the time the deed to her was executed (so construed in *Hunt* v. *Hunt*, 169 Tenn., 1, at top page 15, 80 S. W. (2d), 666); and the rule forbidding parol evidence to vary or contradict a written instrument is that all prior and contemporaneous oral negotiations and agreements between the parties are merged in and superseded by the written instrument.

In *Gibson County* v. *Fourth, etc., Bank,* 20 Tenn. App., 168, at page 177, 96 S. W. (2d), 184, at page 189, the Court quotes from the opinion in *Bryan* v. *Hunt,* 36 Tenn. (4 Sneed), 543, 70 Am. Dec., 262, as follows:

"It is a well-settled rule of the common law, independently of the statute of frauds, that where a contract has been reduced to writing, and is complete in its terms and free from ambiguity, verbal evidence is not allowed to be given of what passed between the parties, either before the written instrument was made or during the time it was in a state of preparation, so as to add to or subtract from or in any manner to vary or qualify, the written contract. The written instrument must be considered as containing the true agreement between the parties, and as furnishing the best evidence of their final intentions and acts."

But it is well settled that this rule does not prohibit the establishment by parol evidence of an agreement made subsequent to the execution of the writing, although such subsequent agreement may have the effect of adding to, changing, modifying or even altogether abrogating the contract of the parties as evidenced by the writing; for the parol evidence does not in any way deny that the original agreement of the parties was that which the writing purports to express, but merely goes to show that the parties have exercised their right to change or abrogate the same, or to make a new and independent contract. 22 C. J., p. 1273, section 1693, and numerous cases cited in the notes.

Among other Tennessee cases cited in the notes to this text is that of *Bryan* v. *Hunt,* 36 Tenn. (4 Sneed), 543, 70 Am. Dec., 262 (quoted from by the Court of Appeals in

*Gibson County* v. *Bank, supra*), in which McKINNEY, J., speaking for the Court, said:

"But though all verbal negotiations and stipulations between the parties to a written agreement, anterior to or contemporaneous with the execution of the instrument, are in general to be regarded as merged in it, it is well settled that the rule has no application to stipulations or agreements made between the parties subsequent to the execution of the written instrument."

This language is quoted and approved in *Johnson* v. *Continental Insurance Co.*, 119 Tenn., 598, 611, 107 S. W., 688. And see 10 R. C. L., 1033, to the same effect.

In the instant case it has been seen that the will was executed in October, 1915, and the trust agreement sought to be set up was made in 1924, some nine years later. It may be that in 1915 the testator did not contemplate the making of the subsequent agreement; but, however that may be, the rule invoked and applied in the *Mee Case* would not prohibit parol evidence to show that after the will was executed and before it became effective the testator exacted and received the promise of the widow which the bill seeks to enforce with respect to the disposition she should make of that part of the estate which was not consumed during her lifetime. For the reasons indicated, we think the evidence in question was admissible.

Finally, there is no doubt, with this evidence in the record, that Mrs. Smithson received the ample provision made for her in her husband's will in consideration of her express agreement to dispose by her own will of what was left of the estate in the manner set forth in the opinion of the Court of Appeals. It will be seen that the testator required this agreement from his wife on

two separate occasions, in the presence of two of his intimate friends; and it was not until she had reaffirmed . the agreement, about ten days before his death, that he directed that the will be turned over to her so that she might probate it when he died. Out of this agreement a trust resulted in favor of the parties intended to receive the benefit thereof. The applicable rule is thus stated in a headnote to *Stone* v. *Manning*, 103 Tenn., 232, 52 S. W., 990: "A resulting trust arises in favor of the wife's heirs where she devised her land to her husband, upon his promise that, if he survived her, he would devise same to her heirs, and he survived and failed to perform his promise."

It is of interest to observe that in Modern Equity, a learned treatise by Harold Greville Hanbury, Fellow of Lincoln College, Oxford, this applicable statement of the trust doctrine is made on page 145, citing authority in which parol evidence controlled:

"If the devisee is designated on the face of the will as beneficial owner, but has an understanding with the testator that he is to hold on certain secret trusts which are definitely communicated to him in the testator's lifetime, whether before or after the making of the will, then, provided that the objects of those trusts are lawful, the Court will compel the devisee to execute them."

The foregoing paragraph is from a division of the work cited discussing the applicability of the Statute of Frauds in England, where the seventh section of the statute is, in substance, still in effect, it being shown that "notwithstanding the statute, it is competent for a person claiming land conveyed to another, to prove by parol evidence that it was conveyed (or willed) to another upon trust for the claimant, and that the grantee [or

those claiming under him] knowing the facts, is denying the trust and relying upon the form of conveyance and the statute, in order to keep the land for himself.''

So in this country it is generally held that a resulting trust, or more accurately, perhaps, as applied to the instant case, a constructive trust, is not within the Statute of Frauds. 26 R. C. L., p. 1215, citing numerous cases, among others *Prichard* v. *Wallace,* 36 Tenn. (4 Sneed), 405, 70 Am. Dec., 254, and note in 51 Am. Dec., 752, 759.

In the *Prichard Case,* sustaining a resulting trust in favor of a wife established by parol proof, the Court thus comments on the Statute of Frauds (p. 409) : ''What then, is there in the way of the enforcement of this trust? The statute of frauds is not, because such a trust is good without writing, when clearly established by proof. It is in the nature of a resulting trust, which may always be set up by parol. . . . Our own cases fully establish this doctrine. *Chester* v. *Greer,* 24 Tenn. (5 Humph.) [26], 34; *Powell* v. *Powell,* 28 Tenn. (9 Humph.), 477; *Ex parte Yarborough and Others,* 31 Tenn. (1 Swan), 202.''

In *Haywood* v. *Ensley,* 27 Tenn. (8 Humph.), 460, on page 466, McKinney, J., says: ''The jurisdiction of a court of equity to enforce the specific execution of a trust, declared by parol, in relation to real property, if plain and unambiguous in its terms, and established by clear and satisfactory evidence, is well established; and indeed, is fully admitted by the counsel for the defendant in this case. The ground of defence assumed in argument is, that the proof wholly fails to support the case made out in the bill.'' (In the instant case we do not understand the Court of Appeals, or counsel, to ques-

tion seriously this rule of equity, the defense pressed and upheld by the Court of Appeals being that the trust was not established by admissible evidence).

For the rule that parol evidence is admissible to establish a resulting trust, Shannon cites (Ann. Cases) *Click* v. *Click*, 48 Tenn. (1 Heisk.), 607, 612; *McClure* v. *Doak*, 65 Tenn. (6 Baxt.), 364, 368; *Hardison* v. *Billington*, 82 Tenn. (14 Lea), 346, 350; *Trust Co.* v. *Lannon*, 36 S. W., 978. To these may be added *Bible* v. *Marshall*, 103 Tenn., 324, 52 S. W., 1077, and others, and see *Thompson* v. *Thompson*, Tenn. Ch. App., 54 S. W., 145, wherein NEIL, J., discusses exhaustively the history and scope of the trust doctrine, including constructive trusts, applicable here. That a trust arises in favor of the heirs of a husband when it is established by parol proof that he willed his property to his wife on an agreement that she would divide it equally between his and her relatives, the facts we have here, has been directly held—a benefit being derived by the legatee from her promise. See *Robinson* v. *Denson*, 40 Tenn. (3 Head.), 395, approving *M'Lellan* v. *McLean*, 39 Tenn. (2 Head.), 684, 687.

The Court of Appeals cites *Goodloe* v. *Goodloe*, 116 Tenn., 252, 92 S. W., 767, 6 L. R. A. (N. S.), 703, 8 Ann. Cas., 112; also *Harris* v. *Morgan*, 157 Tenn., 140, 7 S. W. (2d), 53, for the well settled proposition that a contract to sell or convey by will lands must be evidenced by writing under the Statute of Frauds. These cases are not cited on the question of a parol trust, to which neither makes any reference, or has any application. In the *Goodloe Case* the bill was filed for specific performance of an alleged contract in parol to will the complainant certain lands. The trust doctrine was not invoked or discussed. There the attempt was made to do violence

to the very purpose and reason, which, in an early case (*Whitby* v. *Whitby*, 36 Tenn. (4 Sneed), 473), this Court declared to underlie the Statute of Frauds, namely, a design "to protect the owners of land from being drawn into hasty or inconsiderate agreements in relation to what is deemed the more valuable and important species of property, and to guard against misunderstanding as as to the nature and extent of such agreements," etc. Mr. Justice Swiggart quotes the foregoing in his learned opinion in *Harris* v. *Morgan, supra,* discussing phases and applications of the Statute of Frauds, but does not discuss trusts or the application of the statute thereto.

Even in jurisdictions in this country where the Seventh section of the statute is in force, which forbids the establishment of trusts by parol, courts of equity, as we have seen to be true in England, in order to prevent a wrong, will admit clear and convincing parol evidence to establish a constructive trust. *Winder* v. *Scholey*, 83 Ohio St., 204, 93 N. E., 1098, reported in 32 L. R. A. (N. S.), 995, 21 Ann. Cas., 1379, is a leading case, followed by an exhaustive supporting note. Because so much in point here, we quote the headnotes (prepared by the Court), as follows:

"1. Where a testator is induced to make an apparently absolute legacy by a promise, express or implied, on the part of the legatee that he will transfer the legacy to another, although no express trust is created, and although the legatee at the time of the promise intended no fraud, a court of equity may interfere to prevent a wrong, and declare the legatee a trustee ex maleficio for the protection of the testator's intended beneficiary.

"2. A trust in an absolute legacy may be established by parol evidence, and the contemporaneous declarations of the testator, and subsequent declarations of the lega-

tee, that the bequest was made for the benefit of a third person upon the promise of the legatee to hold it in trust, are admissible for that purpose.''

Also, see *Jasinski* v. *Stankowski*, 145 Md., 58, 125 A., 684, as reported in 35 A. L. R., 275, followed by a full annotation. Assuming the necessity of finding some degree of fraud to justify overriding the express provisions of the Seventh Section, the Courts, in jurisdictions where that section applies, hold that constructive fraud appears when the parol proof is that the legatee made any representation, or offered any inducement, or affirmatively indicated agreement to the conditions imposed by the devisor, or grantor. In Tennessee the Courts have not had this difficulty to contend with, the Statute of Frauds having no application for reasons heretofore suggested.

It may be added that this is not a case in which any question arises as to the sufficiency or character of the parol evidence to establish the trust, whether or not it was within the clear, cogent and convincing rule, discussed in *Stone* v. *Manning, supra,* and *Hunt* v. *Hunt, supra.* The situation presented is unique in that there is no dispute as to the facts established by parol, and the answers go no further than to disclaim knowledge and ask for proof. Admittedly, then, we have a case in which the intent of the testator is thwarted by the holding of the Court of Appeals in applying the rule which excludes parol evidence to contradict a writing, contrary to the reason on which this rule rests. We think it fortunate, then, that the exceptions to this rule which we find to be applicable, may be invoked in order that justice may be done. The unquestioned merits are thus reached.

The decree of the Court of Appeals must be reversed, and that of the Chancellor affirmed.