IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 21, 2000 Session

## INTERNATIONAL DELI& CATERERS, INC. d/b/a OVERSTUFFED DELI & CATERERS v. RAYMOND SHIELDS AND KIMBERLY S. SHIELDS

**An Appeal from the Circuit Court for Shelby County**
**No. 91076 T.D.     James F. Russell, Judge**

---

**No. W2000-00269-COA-R3-CV - Filed July 31, 2001**

---

This is a contract case. The defendants entered into a franchise agreement with the plaintiff to own and operate a franchise. After the defendants failed to make royalty payments for two months and then failed to make a note payment, the plaintiff filed suit alleging breach of contract. The defendants counter-claimed, alleging that the plaintiff breached the contract first by not operating a marketing fund mentioned in the franchise agreement and by not furnishing a sign provided for in the purchase agreement. At trial, the trial court allowed testimony by the plaintiff as to discussions, prior and subsequent to the signing of the agreements, in which he claimed that the parties had agreed upon different terms regarding the marketing fund and sign. The trial court found that the plaintiff had not breached the agreements by not maintaining the marketing fund or furnishing the sign, and that even if it were a breach, it was not a material breach. The defendants now appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S. and ALAN E. HIGHERS, J., joined.

Raymond A. Shields and Kimberly S. Shields, Pro Se.

George T. Wheeler, Jr. and Michelle M. Drake, Memphis, Tennessee, for the appellee International Deli & Caterers, Inc. d/b/a Overstuffed Deli & Caterers.

### OPINION

This is a contract case. International Deli &Caterers, Inc. ("IDC") is a Tennessee corporation doing business as Overstuffed Deli & Caterers ("Overstuffed Deli"). Derrick Batiwalla ("Batiwalla") is the president and sole shareholder of IDC. In May 1997, the defendant/appellants Raymond and Kimberly Shields ( collectively "the Shieldses") entered into a franchise agreement with IDC, under which they would own and operate an Overstuffed Deli. The agreement provided

that the Shieldses would pay IDC an initial franchise fee of $17,500, as well as royalty payments of five percent of the deli's semi-monthly gross sales. By mutual mistake of the parties, the Shieldses agreed to and paid six percent of the deli's gross sales. The agreement also provided that the Shieldses would pay two and a half percent of their deli's semi-monthly revenue to IDC for a marketing fund which IDC would maintain and administer for "certain advertising, promotion, public and other marketing programs." Despite this, no marketing fund was in place when the parties signed the franchise agreement or thereafter. However, IDC did not collect any funds from the Shieldses or any other franchisees for the marketing fund.

In addition to the franchise agreement, the parties entered into a purchase agreement, under which the Shieldses purchased from IDC furniture, fixtures, and equipment to be used in the deli. Among the items listed in the purchase agreement was an unlit sign bearing the Overstuffed Deli name. The Shieldses never received a sign.

IDC agreed to finance the initial franchise fee and the Shieldses' obligation under the purchase agreement. Accordingly, the Shieldses executed a promissory note for the amount of the initial franchise fee and their obligation under the purchase agreement. Payments on the note were due monthly.

The Shieldses' deli began operation on May 22, 1997. Pursuant to the franchise agreement, the Shieldses made royalty payments to IDC for May, June, and July of 1997. They also made the required promissory note payments for the months of July, August, and September. However, the Shieldses failed to make any further royalty payments or payments on the promissory note. Consequently, the deli was closed on October 20, 1997.

In November 1997, IDC filed a complaint for replevin and damages seeking to recover, *inter alia*, the items pledged to secure the promissory note and money and damages resulting from the Shieldses' breach of the promissory note, franchise and security agreements. By consent order, IDC took possession of the furniture, fixtures and equipment used to secure the promissory note. The Shieldses later filed an answer and counter-complaint alleging that IDC breached the parties' contracts by failing to maintain a marketing fund, failing to provide advertising, and failing to provide a permanent outside sign. As an affirmative defense, the Shieldses pled fraud in the inducement, alleging that IDC had fraudulently misrepresented the nature and benefits of franchise ownership and the financial status of the other franchise holders, and had overcharged them for the items in the purchase agreement.

At trial in December 1999, over the Sheildses' objections, the trial court permitted testimony by Batiwalla that he and the Shieldses had numerous conversation prior to the signing of the franchise agreement in which he told the Shieldses that the marketing fund was not active at that time. Consequently, the Shieldses were not responsible for the monthly contributions to the marketing fund required by the franchise agreement. He said that the Shieldses never asked IDC to reactivate the marketing fund, nor did they offer to begin making payments to the marketing fund.

Batiwalla admitted that he never furnished the Shieldses with a sign. He testified that the Shieldses indicated that they preferred a lit sign and that the parties agreed that Batiwalla would contribute $1500 towards the purchase of a lit sign. He later placed a down payment with a company to begin production on a new lit sign, but he stopped production on the sign after the Shieldses stop making the royalty payments and indicated that they might close their deli.

Mr. Shields testified that he told Batiwalla that even though he preferred a lit sign, he could not afford a lit sign and would prefer an unlit sign to no sign at all. Mr. Shields said that he told Batiwalla many times that the deli needed a sign. Mr. Shields was forced to purchase a banner to place on the building to let potential customers know the deli was open. However, the banner was insufficient and did not provide the needed visibility.

Mr Shields also testified that he did not waive his right to the marketing fund. He said that when he signed the franchise agreement he believed that the marketing fund was in place. He asserted that he did not learn until a franchisees' meeting in August 1997 that the marketing fund was not in place. Mr. Shields said that the marketing fund program was one of the main things that attracted him to the franchise.

The trial court found that IDC had not breached the franchise agreement by not maintaining and administering the marketing fund. The trial court found that the Shieldses were aware at the time they signed the agreement that the marketing fund was not active and acquiesced to the absence of the fund. The trial court further stated that even if IDC's failure to maintain the marketing fund was a breach, it was not a material breach to constitute grounds for rescission. The trial court also found that IDC did not breach the purchase agreement by failing to provide a sign. It determined that the parties agreed that IDC would furnish $1500 toward the acquisition of a lit sign after the Shieldses indicated that was the type of sign they preferred. The trial court found that IDC complied with the parties' agreement to contribute $1500 toward a lit sign. It concluded that even if the failure to provide a sign was a breach, it was not a material breach warranting rescission. The trial court found no "credible evidence" that the Shieldses ever demanded that IDC establish an active marketing fund or deliver an unlit sign prior to the Shieldses' default. Consequently, the trial court concluded that IDC did not breach any agreement with the Shieldses. The trial court found in the alternative that, even if IDC's actions constituted a breach, "such [a] breach [did not] constitute fraud in the inducement, misrepresentation or other wrongful conduct" that would warrant rescission or the Shieldses' nonperformance. The trial court awarded IDC $56, 064.82 in damages, representing the outstanding balance and interest under the promissory note, the unpaid royalties, and attorney's fees, minus a credit for the amount which the Shieldses had mistakenly overpaid in royalties, the fair market value of the items surrendered to IDC, and the $1500 IDC had agreed to contribute to the lit sign. From this decision, the Shieldses now appeal.

On appeal, the Shieldses argue that the trial court erred in admitting Batiwalla's testimony that he had told the Shieldses prior to their signing the agreement that the marketing fund was not active. They contend that Batiwalla's testimony was prohibited by the parol evidence rule because it contradicted the written terms of the franchise agreement. The Shieldses also argue that

Batiwalla's testimony regarding the discussions on the lit sign was inadmissible parol evidence and should not have been considered because the purchase agreement and other documents expressly provided for a used unlit sign. They maintain that IDC's failure to provide the marketing fund and the sign as required by the agreements were material breaches because IDC's failure to provide the items rendered it impossible for them to successfully run the deli. They contend that without the marketing fund they were unable to adequately advertise and market their deli and the lack of a proper sign made the deli difficult to find and virtually invisible. They assert that had they known that there would not be an active marketing fund and that they would never receive the sign, they would not have entered into the contract with IDC.

Our review of this case is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure, which provides that review of findings of fact by the trial court shall be *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the factual findings, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993). Our review of the trial court's conclusions of law are *de novo* with no presumption of correctness. ***Id.***

Under the parol evidence rule, contracting parties generally cannot admit extraneous evidence to contradict, vary, or alter a written contract when the written instrument is valid, complete and unambiguous, absent the existence or claim of fraud or mistake. ***See Whelchel Co. v. Ripley Tractor Co.***, 900 S.W.2d 691, 692-93 (Tenn. Ct. App. 1995); ***GRW Enterprises, Inc. v. Davis***, 797 S.W.2d 606, 610 (Tenn. Ct. App. 1990). However, parol evidence may be used to establish that the written contract does not accurately embody the agreement between the parties because of the existence of an independent or collateral agreement not in conflict with the written contract or the existence of a subsequent agreement, even if the subsequent agreement modifies or abrogates the terms of the written agreement. ***See Brunson v. Gladish*** 125 S.W.2d 144, 147 (Tenn. 1939); ***GRW***, 797 S.W.2d at 610-11 (citations omitted). Parol evidence may also be admitted to show a waiver of a contractual provision. ***TBC Corp. v. Wall***, 955 S.W.2d 838, 844 (Tenn. Ct. App. 1997).

In this case, the trial court admitted parol evidence in the form of Batiwalla's testimony of conversations he and the Shieldses had prior to, contemporaneous to, and after the signing of the franchise and purchase agreements. The conversations were pertinent to whether the written agreement accurately reflected the contract between the parties. The parol evidence was also used to establish a waiver of the marketing fund provision in the franchise agreement and a subsequent modification of the requirement of a used sign, and that the written agreement did not reflect the actual contract. We find no error by the trial court in admitting the evidence.

The trial court found that IDC had not breached the parties' agreements based on its determination that the marketing fund provision of the franchise agreement had been waived and the parties had entered into a separate agreement regarding a sign for the deli. The Shieldses argue that the trial court erred in this finding because the only evidence of the waiver and new agreement was Batiwalla's testimony. However, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses and their

manner and demeanor while testifying is in a far better position than this Court to decide those issues. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id*.; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). The trial court's finding that the contract between the party had been altered was based on its assessment of the parties' credibility. Affording due deference to the trial court's determination of credibility, we conclude that the evidence does not preponderate against the trial court's finding. This holding pretermits any other issues raised on appeal.

The decision of the trial court is affirmed. Cost on appeal are taxed to the appellants, Raymond Shields and Kimberly S. Shields, and their surety, for which execution may issue if necessary.

_____
HOLLY K. LILLARD, JUDGE