Jerald K. JAYNES; Gordon H. Newman, Plaintiffs–Appellees,

v.

Robert C. AUSTIN, Jr., Defendant–Appellant.

No. 99–6226, 99–6409, 00–5102.

United States Court of Appeals, Sixth Circuit.

Sept. 25, 2001.

Before KRUPANSKY, SUHRHEINRICH, and SILER, Circuit Judges.

PER CURIAM.

Defendant appeals orders that enforce settlement agreements, require Defendant

to sign releases, and award attorney fees to plaintiffs' counsel. We AFFIRM the judgment of the district court.

## I. BACKGROUND

On November 6, 1997, Jerald K. Jaynes ("Mr.Jaynes") and Gordon H. Newman ("Mr.Newman") (collectively "Plaintiffs") sued Robert Austin, ("Defendant"), Rolich Corporation ("Rolich"), and Unaka Company, Incorporated ("Unaka") (collectively "Corporate Defendants") in federal court for wrongful termination. Rolich and Unaka were dismissed, and all but two counts against Austin were dismissed. The two remaining counts were (1) breach of fiduciary duty under ERISA, and (2) tortious interference under Tennessee law with the at-will employment of Jaynes and Newman.

A jury trial was set for April 5, 1999. The parties met with each other and a mediator on April 1, 1999, to settle the case. In the early morning hours of April 2, 1999, the parties executed and exchanged two-page Settlement Agreements.

The Settlement Agreements mutually released the parties from all claims, except those arising from Plaintiffs' service as members of the administrative committee of Unaka's Employees' Profit–Sharing Plan and Trust (the "Plan"). The Settlement Agreements also required Defendant to pay each Plaintiff a certain amount of money within 60 days after executing the agreements. However, the Settlement Agreements did not include any provision regarding attorney fees or judicial enforcement.

On May 29, 1999, Austin's counsel sent checks to Plaintiffs for the settlement payments along with forms of General Release to be signed by the Plaintiffs. The General Releases contained new terms not present in nor bargained for in the Settlement Agreements. One new term required Plaintiffs to withdraw all of their funds from the Plan and to release the Plan from all claims. Another new term released "shareholders," in addition to "directors, officers, employees, and agents" of Unaka and Rolich. Austin conditioned negotiation of the checks on Plaintiffs signing the General Releases.

Plaintiffs objected to the requirement that they withdraw their funds from the Plan. On June 4, 1999, Plaintiffs moved either to enforce the Settlement Agreements without executing the General Releases or to proceed to trial (the "First Motion"). On June 30, 1999, the district court directed the parties to sign the releases according to the terms of the Settlement Agreements without requiring Plaintiffs to withdraw their funds from the Plan (the "First Order"). The district court also ordered Austin to pay the Plaintiffs' reasonable attorney fees associated with Plaintiffs' enforcement of the Settlement Agreements. On July 19, 1999, Austin filed a Notice of Appeal from the First Order, which this Court denied relief as premature.

On July 28, 1999, Plaintiffs moved the district court (the "Second Motion") to (1) award additional attorney fees against Defendant for expenses incurred between filing the First Motion and the entry of the First Order, (2) approve an additional revision to the forms of the General Releases that Defendant had submitted to the Plaintiffs for their signatures, and (3) require Defendant to execute and deliver forms of the General Releases as amended by the Plaintiffs. Plaintiffs' revision of the General Releases (1) removed "shareholders" from the entities released because the Plan was a shareholder and (2) required Defendant to give a release on behalf of Unaka and Rolich, as well as on behalf of himself personally. On August 31, 1999, the dis-

trict court awarded additional attorney fees and approved Plaintiffs' revisions of the General Releases (the "Second Order"). Defendant filed an Amended Notice of Appeal on September 29, 1999, for both the First Order and the Second Order.

On September 22, 1999, Plaintiffs moved for additional attorney fees (the "Third Motion"), which the district court awarded on January 4, 2000 (the "Third Order"). The Third Order concludes: "In the Court's judgment, all pending matters have been resolved, the releases have been signed by the defendant, and, despite the absence of an order of compromise and dismissal, this case may be and hereby is CLOSED." On January 21, 2000, Defendant filed a Notice of Appeal for the Third Order.

## II. DISCUSSION

Austin raises several issues challenging the authority of the district court to enforce the Settlement Agreements, to award attorney fees, to order revisions to the General Releases, and to direct Austin to sign the General Releases on behalf of Unaka and Rolich.

### A. Enforcement of the Settlement Agreements

■ Austin claims that the district court did not have an independent basis of jurisdiction to enforce the parties' Settlement Agreements. Generally, after an entry of judgment or dismissal of an action, a federal court must have an independent basis for jurisdiction to enforce a settlement agreement. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (after parties settled case and entered an order of dismissal, the district court had no jurisdiction to enforce the settlement agreement); *Downey v. Clauder*, 30 F.3d 681, 687 (6th Cir.1994) (after parties settled case and court entered a judgment without retaining jurisdiction to enforce settlement agreement, the district court did not have jurisdiction to enforce settlement agreement). However, before entry of judgment or dismissal, district courts have jurisdiction over the subject matter of the cases pending before them and "retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976); *see also Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir.1988).

Here, the district court enforced the parties' Settlement Agreements while the case was still pending. Only after the parties executed their agreement did the district court close this case. Thus, no independent basis of jurisdiction was necessary.

### B. Revision of the General Releases

Austin also contends that the district court erred by permitting Plaintiffs to rewrite the General Releases by striking the unbargained-for terms. Austin argues that the district court did not have the authority to allow Plaintiffs to rewrite the General Releases. Austin further claims that a factual dispute existed to the parties' intent and argues that he was entitled to a hearing to resolve it.

First, the district court did not allow Plaintiffs to rewrite the General Releases. Rather, the General Releases were revised to reflect the Settlement Agreements. As stated above, courts retain the inherent power to enforce agreements that settle pending litigation. *Brock*, 841 F.2d at 154; *Bowater N. Am. Corp. v. Murray Mach., Inc.*, 773 F.2d 71, 76–77 (6th Cir.1985); *Aro Corp.*., 531 F.2d at 1371.

32000

Second, an evidentiary hearing was not needed to determine the parties' intent. Under the parole evidence rule in Tennessee, prior or contemporaneous oral evidence of the parties' conduct and statements may not be offered to vary or qualify a written contract whose terms are complete and unambiguous. *Brunson v. Gladish,* 174 Tenn. 309, 125 S.W.2d 144, 147 (1939).

■ Here, the parties signed written Settlement Agreements after mediation of their disputes. As written, they appear complete and unambiguous. In spite of the pellucidity of the Settlement Agreements, Defendant inserted language in the General Releases that Plaintiffs had not agreed to or bargained for in the Settlement Agreements (requiring Plaintiffs to withdraw their funds from the Plan and releasing the Plan as a shareholder from liability).

Defendant argues in vain that the phrase "agree to release" in the Settlement Agreements contemplates additional releases with new terms that the parties had not yet agreed upon. Although this phrase may anticipate additional releases, it simply does not, by its plain terms, contemplate the new terms that Defendant supplied.

#### C. Jurisdiction on Interlocutory Appeal

Austin also contends that his appeal of the First Order of June 30, 1999, divested the district court of jurisdiction to consider Plaintiffs' further motions and issue additional orders. As a general rule, only final decisions are appealable, mere interlocutory decisions are not appealable, unless properly certified under Fed.R.Civ.P. 54(b) and accepted by a circuit court. *Soliday v. Miami County,* 55 F.3d 1158 (6th Cir. 1995).

■ As this Court has previously held, the First Order was not a final order and not appealable. Accordingly, the attempted appeal did not divest the district court of jurisdiction. Moreover, even after an appeal is taken, a district court retains the power to enforce but not expand on its orders so long as the judgment has not been stayed or superseded. *NLRB v. Cincinnati Bronze, Inc.,* 829 F.2d 585, 588 (6th Cir.1987). Here, the district court's First Order was not stayed. Thus, the First Order did not divest the district court of jurisdiction.

#### D. Further Revisions to the General Releases

Austin also maintains that the district court compounded its error in its Second Order by approving Plaintiffs' further revisions to the General Releases. Austin argues that the First Order authorized only certain modifications to the General Releases and that the Second Order approved an additional change that Plaintiffs first requested in their Second Motion, which was, itself, filed after the ten days deadline for seeking reconsideration of the First Order. Austin also contends that the requested revision was unnecessary because the protection that Plaintiffs sought already was provided in a "carve out" in the General Releases.

■ Austin's arguments are misplaced. Until a district court enters a judgment, it may alter or amend any of its orders. Under Fed.R.Civ.P. 54(b) an order that determines fewer than all the claims or rights of the parties does not terminate the action, and the order is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Thus, the district court was free to revisit its First Order in its Second Order or in its Third Order. Moreover, Fed.R.Civ.P.

59 does not limit the time in which to reconsider the First Order because the 10–day limitation of Rule 59 applies to judgments not to interlocutory orders.

Furthermore, even if the revisions to the General Releases were not necessary, they remove a potential ambiguity. As the district court explained in the Second Order: "[w]ith regard to the proposed releases ..., it is clear that the plaintiffs have stricken one word not previously addressed in the Court's Order. They have ... eliminated the word "shareholders" found in line 7 of the original releases proposed by Mr. Austin. However, although the plaintiffs did not notice this when they first complained about the releases, the word "shareholders" in line 7 is another attempt by Mr. Austin to go beyond the terms of the original settlement agreement. In fact, the insertion of the word adds an ambiguity to the release that could only result in further litigation between the parties."

Accordingly, we conclude that the district court did not err in issuing its Second Order.

### E. Legitimacy of the Second Order

As with the First Order, Austin further contends that the district court lost jurisdiction of the matter once Defendant appealed the Second Order. He also argues that the Second Order impermissibly expanded on the First Order. Moreover, Austin contends that the district court had no authority to direct him to sign the General Releases for himself or on behalf of Unaka and Rolich after they had been dismissed.

As discussed above, the district court did not lose jurisdiction of the case after Defendant appealed the Second Order, because it, like the First Order, was not a final order or judgment of the court.

■ Further, as also discussed above, a district court has the inherent authority and duty to require the parties to an action that have settled their dispute to execute settlement documents that reflect their agreement. *Aro Corp.*, 531 F.2d at 1371–72 ("The court below had not only the inherent power but, when required in the interests of justice, the duty to enforce the agreement which had settled the dispute pending before it.").

■ In its Second Order, the district court ordered Defendant "to execute and deliver the General Releases prepared by the plaintiffs, within ten (10) days from the date on this Order, so that this action may finally be dismissed." J.A. at 225. The Second Order allowed Plaintiffs to remove the term "shareholder" from the General Releases because it was not included in the Settlement Agreements. Although Plaintiffs did not complain of this insertion in their First Motion, after further study of Defendant's General Releases, Plaintiffs noticed the insertion and filed their Second Motion to remove it. Plaintiffs were then concerned because the profit sharing Plan was considered a "shareholder" in the former corporate Defendants and the Plan could have been released from liability to Plaintiffs if they had signed them in the form Defendant submitted them. The district court simply directed Defendant to sign forms of the General Releases limited to terms that the parties previously bargained for and incorporated into the mediated Settlement Agreements to dispose of the case. This order was within the inherent power of the district court to enforce the Settlement Agreements while the action was before it.

Further, it was not improper for the district court to order Defendant to sign on behalf of Unaka and Rolich because while, they were parties to this case, they

had both entered the Settlement Agreements. In addition, Defendant was an officer of each of the former corporate Defendants.

F. Attorney Fees

Finally, Austin claims that the district court erred in granting attorney fees to Plaintiffs. He argues that (1) there is no legal basis for an award of attorney fees, (2) there was no evidentiary hearing on Plaintiffs' entitlement to or the amounts of attorney fees, and (3) Plaintiffs have not shown that the legal services were reasonable or necessary.

 Under the American Rule, parties bear their own attorney fees; however, there are several exceptions to this general rule. *Jones v. Continental Corp.*, 789 F.2d 1225, 1228–29 (6th Cir.1986). However, as part of its inherent powers, a district court may award attorney fees in its discretion without statutory authorization for willful violation of a court order by the losing party and for bad faith or oppressive litigation practices. *Alyeska Pipeline Serv. Co. v. Wildemess Soc'y*, 421 U.S. 240, 275, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *F.D. Rich Co. v. United States for Use of Indus. Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974); *Jones*, 789 F.2d at 1229. Moreover, the district court has supervisory power to regulate the conduct of attorneys and parties before it, which may include awarding attorney fees. *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *Chambers v. NASCO. Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). However, to award attorney fees under a court's "inherent powers" requires "a finding that an attorney 'willfully-abuse[d] judicial processes by conduct 'tantamount to bad faith.'" *Jones*, 789 F.2d at 1229.

Here, Defendant attempted to include new terms in the General Releases that were not included in the Settlement Agreement and not agreed to or bargained for. In its First Order, the district court stated that "there is no question in the Court's mind that the defendant has attempted to impose a new term in the proposed releases which is definitely outside the contemplation of the parties in their settlement negotiations. This he may not do." The district court then awarded attorney fees to Plaintiffs for the fees associated with the insertions of new terms in the General Releases, which Plaintiffs would not otherwise have incurred.

In its Second Order, the district court approved the requested amount of attorney fees and ordered Defendant to execute and deliver the General Releases prepared by the plaintiffs within ten days of the order. In its Third Order, the district court awarded attorney fees to Plaintiffs "to compensate them for the additional legal expenses incurred in responding to the defendant's continuing effort to delay and obstruct final resolution of this action."

 Although the district court did not use the phrase "wilfully abuse the judicial process," it did conclude that Defendant attempted to "obstruct" and "delay" resolution of the action. We find that to be a sufficient discretionary finding of bad faith to justify an award of attorney fees.

Defendant argues that he was simply responding to Plaintiffs' motions, which he has a right to do. What Defendant ignores, however, is that he had already agreed in the Settlement Agreements to resolve this dispute, but then attempted to impose new terms in the proposed release, which resulted in additional expense to Plaintiffs.

Defendant also contends that the district court should have held an evidentiary

hearing in determining the amount of attorney fees. The local rule for the Eastern District of Tennessee states that "motions will be disposed of routinely as soon as possible after they become at issue, unless a hearing has been requested and granted or unless the Court desires a hearing on the motions." E.D. TN. LR 7.2. Neither the Plaintiffs nor Defendant requested a hearing on the motion for attorney fees. Defendant, therefore, forfeited his right to a hearing. Further, Defendant has not shown that the district court abused its discretion in awarding the amount of attorney fees.

## CONCLUSION

Accordingly, we AFFIRM the judgment and orders of the district court.