Margaret M. Greenly,

*vs.*

Harry B. Greenly.

*Sussex, October* 11, 1946.

*Daniel J. Layton* for complainant.

*James M. Tunnell, Jr.,* of the firm of Tunnell & Tunnell for defendant.

HARRINGTON, Chancellor: The complainant, Margaret M. Greenly, wife of the defendant, Harry B. Greenly, seeks a decree that she is the real equitable owner of her husband's legal interest in certain real property near Delmar, in Sussex County, standing in their names as husband and wife, and, therefore, as tenants by the entirety; and for a conveyance to her of her husband's legal interest.

The complainant has an aged father, Arthur W. Phippin, and considers it her moral and legal duty to provide for his maintenance and support; she is not financially able to do this except at her own home. Harry B. Greenly knew of the complainant's responsibilities in this respect and of her purpose to fulfill her obligations, and their marriage took place June 24, 1944, with that understanding. In the latter part of the year 1944, Harry B. Greenly was anxious to engage in the business of raising chickens; he had no experience whatever in that line, but the complainant, and especially her father, had. Moreover, they were acquainted with the Tull Brothers of Seaford, Delaware, who were willing to finance the undertaking. The Tulls knew nothing about the defendant, and relied entirely on the complainant and her father. The latter were of material assistance in growing the first flock of chickens, and the defendant promised the complainant one-half of the profits, if any, and arranged accordingly with Tull Brothers to pay her. In the spring of 1945 the Tulls paid the complainant by check about $1,800 which represented her share of the profits. The evidence justifies the conclusion that this money was paid to, and accepted by, Margaret M. Greenly, as her own property, without condition or reservation as to its use. Harry B. Greenly testified that it was given to her for the purpose of buying a home, but his assertion in this respect is flatly denied by both the complainant and her father, and by the circumstances. He also testified that he told the complainant that he would not have divided the profits with her had he known that she was not going to put the money back into the business; but he made no such

claim in a voluntary statement before the magistrate in Georgetown, nor before the magistrate in Delmar, who questioned him closely about the difficulties with his wife; on the contrary, he substantially admitted that he paid the money to Margaret M. Greenly to do with as she pleased. The defendant advanced no claim to the contrary to Mr. Tull when the division of the profits was arranged. Had any such condition been attached to the payment, it is reasonable to suppose that the defendant would have explained the purpose of sharing the profits on these occasions.

At the time of their marriage, Margaret M. Greenly had about $1,200 which represented her savings. The house provided by the defendant on the chicken farm was a small dwelling, in poor condition, and was wholly unfit for a place of residence. The complainant was anxious to have a proper home, and frequently urged the defendant to provide one, but was always met with his statement that the house was good enough for him and if she did not like it she could leave. All through the year 1945 the complainant expressed her dissatisfaction with their home; the defendant did nothing about it, and at the end of the year was not in a position to acquire a better home as he had lost heavily in his subsequent chicken operations. At any rate, it is clear that he displayed no interest in acquiring a home until the end of 1945, at which time the complainant learned that the Delmar property was for sale. Margaret M. Greenly and her father went to look at the property and concluded to buy it; her husband also saw the place. The owner of the property lived in Norfolk, and the complainant went there to see him; she entered into an agreement to purchase the place, and paid the first installment of $100 on the purchase price.

On her return home, the complainant told the defendant what she had done and he requested that the conveyance be made to them jointly, saying that it was the fair thing to do. At the same time he expressly promised that the complainant's father could make his home with them and if any-

thing should happen to her he would take care of him. Margaret M. Greenly was, and is, a sick woman, under the constant care of a physician, and naturally was concerned about her father's future. She knew nothing of law and was given no independent advice. Pursuant to her husband's request and in reliance on his promise, with respect to the care of her father, she had the Delmar property conveyed to them, as tenants by the entirety; she otherwise would not have done this. Subsequently, the complainant made a further payment of $1,100 on the purchase price of the property, and, together with her husband, joined in a mortgage to secure the remainder. Harry B. Greenly paid nothing. In February of 1946 they moved into the property, and the defendant almost immediately resented the presence of his father-in-law in their home, and began a course of conduct which resulted in this action. He attempted in various ways—by abuse, cursing, threats, assaults, direct orders, and by legal action—to drive Mr. Phippin away; and also attempted to compel the complainant to order her father to leave the property. These efforts caused bitter quarrels, resulting in the abuse of the complainant and in an actual and serious assault upon her, which terminated in divorce proceedings. The defendant, in his answer, admits that it it impossible for the three of them to live on a friendly basis in the same house, and in defense asserts that this is the result of his father-in-law meddling in domestic affairs. The complainant and her father positively deny that assertion. On these facts, Margaret M. Greenly claims that she is entitled to a decree, whether a resulting trust or a constructive trust be relied on.

A resulting trust is one implied by law from the supposed intention of the parties and the nature of the particular transaction. *Carkonen v. Alberts*, 196 *Wash.* 575, 83 *P.2d* 899, 135 *A.L.R.* 209; 1 *Pomeroy Eq.Jur.*, (5th Ed.,) § 155; 4 *Pomeroy Eq.Jur.*, (5th Ed.) § 1031. It rests upon the natural presumption that, in the absence of evidence to

the contrary, the person who supplies the purchase price intends that the property shall inure to her own benefit, and that a conveyance in the name of another is for some mere incidental reason. *Gunstone v. Walker,* 157 *Wash.* 475, 289 *P.* 53; 4 *Pom.Eq.Jur.,* § 1031; 54 *Amer.Jur.* 153, 158; see also *Newell v. Morgan,* 2 *Har.* 225. While the burden of proof is on the complainant, she is aided in the first instance by that presumption. 2 *Bogert on Trusts and Trustees,* § 454, *pp.* 1360, 1361. The payment of the consideration and the real intent of the person who paid it are, therefore, the usual important elements to be considered in determining whether such a trust exists; but any such inference in favor of the complainant, arising from payment, may be rebutted by other pertinent facts and circumstances indicating her real intent. 2 *Bogert on Trusts and Trustees,* § 454, *p.* 1360; 54 *Amer.Jur.* 158. Fraud, whether actual or constructive, is not an essential element. *Muller v. Schram,* 100 *N.J.Eq.* 143, 134 *A.* 657; 2 *Bogert on Trusts and Trustees,* § 451, *p.* 1348.

Where a deed is made to the wife, but the consideration is paid by the husband, there is rebuttable presumption that a gift to the wife is intended. *Ricks v. Wilson,* 154 *N.C.* 282, 70 *S.E.* 476; 2 *Bogert on Trusts and Trustees,* § 459, *p.* 1391; 54 *Amer.Jur.* 160.

Where the wife pays the consideration and the deed is made to the husband with her consent, under the majority rule it seems that in the absence of other controlling circumstances, it is ordinarily presumed to be for her benefit, and that no gift was intended. *Keaton v. Pipkins,* (10 *Cir.*) 43 *F.2d* 497; *Havens v. Bliss,* 26 *N.J.Eq.* 363; 2 *Bogert on Trusts and Trustees,* § 460, *p.* 1397; 1 *Tiff. Real Property,* 649. Whatever reason there may be to criticize this rule under modern conditions, it seems to be firmly established by the decided weight of authority. See 2 *Bogert on Trusts and Trustees,* § 460, *p.* 1399.

In law, a conveyance of land to a husband and wife

creates an estate by the entirety, and not the usual joint tenancy or tenancy in common. *Kunz v. Kurtz,* 8 *Del.Ch.* 404, 68 *A.* 450; *Heitz v. Sayers,* 2 *W.W.Harr.* (32 *Del.*) 207, 208, 121 *A.* 225.

Constructive trusts do not arise from the intent of the parties, "but depend for their existence on the wrongful conduct of the defendant, which induces a court to adjudge him a trustee"; they are remedial in character (*Restat. Law of Trusts,* 1249), and ordinarily bear little, or no, relationship to resulting trusts. 2 *Bogert on Trusts and Trustees,* § 454, *p.* 1359; 2 *Bogert on Trusts and Trustees,* § 451; *Carkonen v. Alberts,* 196 *Wash.* 575, 83 *P.2d* 899, 135 *A.L.R.* 209; 1 *Pom.Eq.Jur.,* (5th Ed.) 210. Some fraudulent or unfair and unconscionable conduct is essential. *Roy v. Enot,* 120 *N.J.Eq.* 67, 183 *A.* 906; *Levine v. Schofer,* 184 *Md.* 205, 40 *A.2d* 324; 2 *Bogert on Trusts and Trustees,* § 451; 3 *Bogert on Trusts and Trustees,* § 471, *p.* 8. But whether a resulting trust, or a constructive trust, be relied on, a complainant must prove her case by clear and satisfactory evidence. 3 *Bogert on Trusts and Trustees,* § 472, *p.* 13. Conceding that the mere fact that Margaret M. Greenly consented to her husband being made a grantee in the deed does not, necessarily, show that she intended him to be the real beneficial owner of that interest, a resulting trust can hardly be relied on. Margaret M. Greenly paid the entire purchase price, but at the time of the execution and delivery of the deed she said that it would be better to have it made that way—to the two of them, as husband and wife. That statement would seem to rebut any possible inference that the deed was intended to be entirely for her benefit.

But was Greenly guilty of such improper and fraudulent conduct that a constructive trust should be decreed?

The rights of the parties must be determined as of the time of the execution and delivery of the deed, and subsequent acts, unless so closely connected therewith as to throw some light on that transaction, are ordinarily of little im-

portance. Hence, Margaret M. Greenly concedes that the defendant's mere failure to carry out his promise, with respect to her father, will not justify a decree on the ground of a constructive trust. *Down v. Down,* 80 *N.J.Eq.* 68, 82 *A.* 322; 54 *Amer.Jur.* 171; 35 *A.L.R.* 288. If, however, Greenly's promise, with respect to future acts, was made with the intent never to perform it, the conclusion that fraud has been established would be justified, and a decree should be entered for the complainant. 54 *Amer.Jur.* 171, 179; 26 *Amer.Jur.* 876. Moreover, active conduct on the part of a grantee in procuring a deed may be an important element in determining the existence of a fraudulent intent. *Jasinski v. Stankowski,* 145 *Md.* 58, 125 *A.* 684, 35 *A.L.R.* 275; *Levine v. Schofer,* 184 *Md.* 205, 40 *A.2d* 324; *Lipp v. Lipp,* 158 *Md.* 207, 148 *A.* 531; 35 *A.L.R.* 293; 54 *Amer.Jur.* 179. This is particularly true when the transaction is between husband and wife, as their relations are in the highest degree confidential, and require the utmost good faith between them. *Peyton v. William C. Peyton Corp.,* 22 *Del.Ch.* 187, 188, 194 *A.* 106; *Id.,* 23 *Del.Ch.* 321, 322, 7 *A.2d* 737, 123 *A.L.R.* 1482; *Jasinski v. Stankowski, supra;* 26 *Amer.Jur.* 737; 54 *Amer.Jur.* 179.

The defendant concedes that when the deed was made, Margaret M. Greenly intended that her father should make his home with them. She seems to have sought to impose that obligation on her husband since the very beginning of their married life in 1944; indeed the marriage took place on that condition. Margaret M. Greenly was not in a normal state of health when the deed was made, and was worried about her father's future. She paid the entire purchase price for the property, and before she would comply with her husband's request—that the deed be made to them as husband and wife—she required him to reiterate, and even amplify, his prior promises with respect to her father. Greenly had then lost heavily in his chicken operations. Apparently, he and his father-in-law had never gotten along any too well, and almost immediately after the deed had

been executed and delivered, Greenly became openly hostile to Mr. Phippin and insisted that he leave the premises. Furthermore, he used drastic methods to carry out that purpose. Each case must depend on its own facts but when all the facts and circumstances are considered, they seem to justify the inference that Greenly's promises, which induced the deed, were made with a fraudulent intent, and in order to procure an interest in the property.

A constructive trust of his legal interest in the property will, therefore, be decreed, and he will be directed to convey that interest to the complainant.