GEORGE H. BULLEN, JR., and PATRICIA D. BULLEN, his wife,
Defendants below, Appellants,

*vs.*

DAN L. DAVIES and ELSIE M. DAVIES, his wife,
Plaintiffs Below, Appellees.

*Supreme Court on Appeal, March 31, 1965.*

*Gerald Z. Berkowitz* and *Samuel H. Lewis,* of Wahl, Greenstein & Berkowitz, Wilmington, for appellants.

*Aubrey B. Lank,* of Theisen & Lank, Wilmington, for appellees.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice: This is an appeal from a judgment of the Court of Chancery ordering the sale of a residence, 55 Oak Knoll Road, Cedars Knoll, Mill Creek Hundred, directing the investment of the net proceeds of sale, and providing for the use by the plaintiffs of the income and a portion of the principal of those proceeds. The

action is one for the impressment of a resulting trust upon the property in favor of the plaintiffs, Dan L. Davies and Elsie M. Davies, his wife, and to compel the defendants, George H. Bullen, Jr., and Patricia D. Bullen, his wife, to convey their record interest in the property upon satisfaction of a mortgage placed upon the premises. The defendant, Patricia D. Bullen, is the daughter of the plaintiffs.

Davies was employed by Allis-Chalmers Company and in 1955 was transferred to that company's Philadelphia District. He and his wife sought a home in the Wilmington area to be near their daughter and her children. They decided to purchase the property in question as a home for themselves for the sum of $22,500.00 contingent upon the placement of a mortgage in the amount of $17,500.00.

The mortgage was to be placed through Mortgage Service Corporation. Its representative, a Mr. Ratledge, informed the plaintiffs that because of their age they would be ineligible to borrow upon a mortgage for a period in excess of fifteen years. The plaintiffs could not afford to meet the payments required on a mortgage loan of less than fifteen years. Mr. Ratledge thereupon told them the loan could be had if it could be arranged to have some younger persons become liable with them on the mortgage loan.

Davies, despite a reluctance springing from prior differences between him and his son-in-law, George Bullen, asked the Bullens to execute the necessary documents as co-signers. The difficulty in obtaining long-term financing was explained to them and that under the plan the Davies and the Bullens would become joint owners on the deed with a consequent right of survivorship, so that if anything happened to the Davies, the Bullens would become sole owners, subject, of course, to the mortgage. The Davies also stated that in any event they wanted the property to go to the Bullens after their deaths.

Before agreeing to become liable, Bullen wanted to know if signing the bond and mortgage would cost him anything, and what his obligation would be if the Davies could not keep up the mortgage payments. Davies assured him that it would cost him nothing because they were planning to put about $5,000 cash in the purchase and, in the event of the retirement of Dan Davies, which was at the time not

too distant, they would make every effort to keep the payments up or, if unable to do so, refinance the loan so as to eliminate the provision for monthly payments on principal. George Bullen thereupon agreed to become bound. At the time they all agreed that the Bullens were to have no present interest in the property and that the Davies were to continue to occupy exclusively the property for their lives.

With this understanding of the proposal, the parties went to Mr. Ratledge who again explained to them the necessity for all of them to appear as grantees and as mortgagors. None of the parties at the time were represented by counsel. They accepted the advice of Mr. Ratledge.

Then followed the settlement for the property in 1956. The Davies appear to have paid cash in the amount of $6,265.90 with the balance raised by a mortgage in the amount of $16,400.00 with a term of 25 years requiring monthly payments of $116.00. The Bullens paid nothing toward the settlement. The bond, warrant and mortgage were executed by the Davies and Bullens, and a deed delivered to them as grantees.

Thereafter, the Davies occupied the property, maintained it and paid the monthly charges required under the mortgage. The Bullens admittedly paid nothing toward the maintenance of the property nor have they made any claim to a present right of joint occupancy, but concede that the Davies have the exclusive right to live in it during their lifetimes. The Bullens, however, do maintain that on the deaths of the Davies the entire property passes to them.

In June 1963, Davies was hospitalized for an operation. Following this, Davies decided to retire for reasons of health. He realized that he could not keep up the mortgage payments on his retirement income and so discussed several possibilities with the Bullens, but ultimately decided to sell the house and move to an apartment. He accordingly requested the Bullens to join in a sale, but the Bullens refused to do so. The Davies thereupon filed this action to force the sale.

Before we consider the arguments of the parties we must note one fact which was not before the Vice Chancellor. The parties to the

cause are in agreement that the deed delivered at the settlement was one which conveyed title to the property to them as joint tenants with a right of survivorship. The deed, itself, for some unaccountable reason, was not introduced in evidence, and is not in the record before us. However, in response to our request, a certified copy was produced. From this it appears that the deed, presumably prepared by Mr. Ratledge, does not accomplish what he told them it would, and which all of them believed it did. The reason for this is that the deed does not comply with 25 *Del.C.* § 701, prohibiting the creation of a joint tenancy except by express words conveying as joint tenants and not as tenants in common.

 This statute, of course, has no application to the creation of a tenancy by the entireties by a conveyance to husband and wife, *Greenly v. Greenly*, 29 *Del.Ch.* 297, 49 *A.2d* 126, but this does not cure the failure in the deed in question to comply with 25 *Del.C.* § 701. The reason for this is that the deed to 55 Oak Knoll Road conveys to "Dan L. Davies and Elsie M. Davies, his wife, George H. Bullen, Jr., and Patricia D. Bullen, his wife." We are frank to say we are not certain as to the nature of the estates created by this deed. Two possibilities suggest themselves, first, that the four named grantees each hold an undivided one-quarter interest in common, or, second, that as to a one-half undivided interest in common the Davies hold as tenants by the entireties, and as to the other half the Bullens hold as tenants by the entireties. In any event, it is clear that 25 *Del.C.* § 701 prevented the creation of a joint tenancy such as the parties intended and thought they were creating.

We admit to a feeling of dismay when this matter came to light for the case was decided below and argued to us upon the theory that a joint tenancy with a right of survivorship had been created by the deed, when such in fact is not the case. Our first impulse was to remand to have this hitherto unrealized fact considered. The question to be considered on such a remand would, of course, have been whether or not the deed should be reformed to conform to the parties' intention. Upon further reflection, however, since the parties are in agreement as to what was intended by the deed, we concluded that a remand would be a futile flourish. Reformation under those circum-

stances would undoubtedly be ordered and the parties would then find themselves in the same position as they have been throughout, both in the Court of Chancery and before us on appeal. We will, therefore, dispose of the appeal upon the supposition, agreed to by the parties, that the deed in fact conveyed to the parties a joint estate with a right of survivorship of some kind. We do this because of our conviction that if the deed had in fact been reformed below this would have been the result.

The Davies argued that the property should be ordered to be sold and a resulting trust impressed on the proceeds of sale after paying off the existing mortgage. They say there was no intention on their part of making a gift to the Bullens of any present interest in the property; that the Bullens have not sought to exercise any right in the property springing from a present interest in it, and that the Bullens have in fact contributed nothing to its acquisition beyond becoming liable on the bond in order to permit the necessary financing to be obtained. It is further argued that the sole claim possibly belonging to the Bullens is one contingent upon their surviving the Davies, and only then as to any equity remaining in the property after their deaths.

The Bullens on the other hand contend that the Davies bargained with them for their agreement to become liable on the bond; that they agreed to do so in return for becoming joint owners, and that the Davies agreed that the property should be owned entirely by them if they survived the Davies. They accordingly argue that no resulting trust should be impressed on any amount over $22,500.00; that the Davies should receive only income, and that the parties should be left to their remedy of partition.

We think the record supports the findings of fact made by the Vice Chancellor. Thus, we take as established the following: The Davies alone have supplied all the cash to acquire the property; the Davies alone had the right to live in the property during their lives; the Davies alone had the duty of maintenance and payment of the mortgage; in return for the Bullens' agreement to become co-signers on the bond the Davies agreed they should have the property after the

Davies' deaths; the deed delivered at the settlement did not legally implement the understanding of the parties since it conveyed a present interest to the Bullens equal to that of the Davies.

Under these circumstances, may the Court direct the sale of the property in the face of the inability of the Davies to continue the required payments, the Bullens not having offered to assist in that respect, and impress a trust on the net proceeds in such manner as to protect the respective interests of the parties in those proceeds? We think it may.

██ Ordinarily a trust results when one pays the purchase price for real estate but takes title in the name of another. A trust of this nature is implied by law from the supposed intention of the parties, and upon the presumption, in the absence of evidence to the contrary, that a person who supplies the purchase price for property intends that it shall be for his benefit. The payment of the purchase price and the real intent of the person who paid it are important elements to be considered in determining whether such a trust exists. *McCafferty v. Flinn,* 14 *Del.Ch.* 307, 125 *A.* 675; *Greenly v. Greenly, supra.*

In the case at bar there is no doubt but that the Davies paid all the cash that has gone into the purchase of this property. It is, of course, true that without the consent of the Bullens to become liable jointly on the bond and mortgage the property could not have been purchased, but the fact remains that the Bullens are out of pocket nothing as a result of this action. Whatever equity has been built up in the property is solely the result of payments made by the Davies alone.

██ Nevertheless, the agreement of the Bullens to become liable was consideration from them to the Davies, and is sufficient to support the right of survivorship all are agreed the Bullens were to have. It therefore follows that no trust may be impressed which does not take the interest of the Bullens into account.

It seems apparent to us, as it did to the Vice Chancellor, that the parties intended the Davies to have the exclusive right to the use of the property during their lifetimes, and that after their deaths the

property would pass to the Bullens, subject, of course, to the obligation of the mortgage, and subject, also, we think, to any other liens which may have come into being during the lifetimes of the Davies.

It now appears that by reason of the inability of the Davies to keep up the mortgage payments they will be deprived of that which all had agreed they were entitled to, viz., the exclusive use of the property for their lives. Since, therefore, the property must obviously be sold, some arrangement must be hit upon which gives recognition to the interest of the Bullens but, at the same time, assures the Davies the enjoyment of what, after all, in reality is their property.

It seems that the most feasible way in which this can be done is to order a sale, pay off the mortgage, and impress a trust upon the remaining proceeds. We think the suggestion of the Bullens that the parties be left to their remedy of partition is wholly inadequate to unsnarl this tangle because the deed which would form the basis for the division of the proceeds of the partition sale does not accurately create the respective interests in the property the parties intended. If it is taken at face value it would penalize the Davies and reward the Bullens to an extent never contemplated. The question remains: What shall be the nature of the trust to be impressed upon the proceeds?

We think it clear that the Court of Chancery, when the right to equitable relief has been established, has broad powers to tailor its relief to fit the circumstances, and to protect so far as possible the interests of the litigants. Its relief may be adapted to the particular rights and liabilities of each party, and it may adjust such rights among the parties. 1 *Pomeroy's Equity Jurisprudence (5th Ed.)*, § 115.

The Vice Chancellor was of the opinion that his judgment must provide for the use and enjoyment by the Davies of the net proceeds of sale and, at the same time, provide that, upon their deaths, the remainder would pass to the Bullens. Because the net proceeds would probably be a relatively small amount, it seemed wise to him to direct that it be placed in a savings account with the interest to be paid to the Davies with the further right to draw from principal at the

rate of $150.00 per month. At the death of the survivor of the Davies, the balance is to be turned over to the Bullens.

We think the Vice Chancellor formed his judgment properly. No other course was open to him by which he could give the Davies the true enjoyment of the money they alone had amassed and, at the same time, protect the possibility of some amount passing ultimately to the Bullens. It does not serve to object, as do the Bullens, that the total sum may be used up before the death of the Davies. Even if that be so, the plain fact is that, in reality and in equity, we are concerned primarily with the Davies' money.

The judgment below is affirmed.