**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| LEAH MASIELLO, | ) | |
| CHRISTINE MASIELLO, and | ) | |
| VICTOR PADOVANI, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 2021-0981-MTZ |
| | ) | |
| v. | ) | |
| | ) | |
| MOSES B. JOHNSON, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING PLAINTIFF LEAH MASIELLO'S
MOTION FOR SUMMARY JUDGMENT**

WHEREAS:[1]

A. Plaintiff Leah Masiello contributed closing costs for the purchase of a home titled in defendant Moses B. Johnson's name (the "Property"). Leah's mother, Christine Masiello, and stepfather, Victor Padovani Jr. (together with Leah, "Plaintiffs") contributed funds and effort toward improving the Property.[2] Plaintiffs contend they contributed to the purchase and improvement of the Property in

---

[1] The background is drawn from undisputed facts in the record on file and presented by the parties. Ct. Ch. R. 56(c). Citations in the form of "OB" refer to Plaintiff Leah Masiello's Motion For Summary Judgment Pursuant To Rule 56(a), at Docket Item ("D.I.") 25. Citations in the form of "AB" refer to Defendant, Moses B. Johnson, Jr.'s Answering Brief In Opposition to Plaintiff, Leah Masiello's Motion For Summary Judgment, at D.I. 33. Citations in the form of "RB" refer to Plaintiffs' Reply Brief In Support Of Leah Masiello's Motion For Summary Judgment Pursuant To Rule 56(a), at D.I. 35.

[2] Because two plaintiffs share a surname, I continue their practice of using first names. I intend no familiarity or disrespect.

reliance on Johnson's stated intention to marry Leah, which they allege was intentionally misleading.[3] Johnson closed on the Property on December 14, 2018, and he and Leah lived there until the fall of 2021, when Leah moved out. Johnson never asked Leah to marry him.

B. While each side presents different parts of the story to the Court, it does not appear the material facts are disputed. The Property is down the street from Christine and Padovani's home, and next door to Leah's brother's home. When the Property became available in August 2018, Leah approached Johnson, her boyfriend of one year, about purchasing it; Leah told him it was her "forever" home, and Johnson replied, "I'm in."[4] Leah and Johnson entered into an Agreement of Sale dated October 17, 2018, and signed October 20, with both their names listed as buyer.[5] Johnson, a veteran, applied to the Navy Federal Credit Union for financing; an unsigned and undated application listed Johnson as the borrower, and stated title would be held jointly by Johnson and Leah.[6] Johnson told Leah this source of financing meant Leah could not be on the Property's title, as she was neither a

---

[3] D.I. 22 ¶¶ 44–46.

[4] OB at 3.

[5] OB Ex. A; AB App. A-027.

[6] OB Ex. B.

2

veteran nor married to Johnson.[7]  Johnson and Leah then entered into an Addendum to Agreement of Sale, removing Leah's name as a buyer.[8]

C. Settlement occurred on December 10, 2018.  Cash to close at the time totaled $11,012.45.[9]  Leah paid $11,077.45 to the closing agent and received an overpayment refund of $65.[10]  She also paid $525 for the home inspection.[11]  Johnson asserts, and Leah does not dispute, that Leah signed a Navy Federal Credit Union form titled "Gift Letter," which was dated November 19, 2018, and had blanks filled in as follows:

> To Whom It May Concern:
> I, Leah Masiello, currently residing at 151 Casimir Dr., New Castle, DE 19720, do hereby certify that I have given/will give a gift of $12,000.00 to my boyfriend to be applied toward the purchase of property located at 105 Casimir Dr., New Castle, DE 19720.  I further certify that there is no repayment expected or implied on this gift, either in the form of cash or future services from Moses.[12]

Leah signed as "Donor" and Johnson signed as "Recipient."[13]  By doing so, they acknowledged "THE FOLLOWING WARNING":

> WE ARE AWARE OF THE FOLLOWING:  I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both,

---

[7] OB at 4; AB at 4–5.

[8] AB App. A-084.

[9] AB App. A-079.

[10] OB at 4; AB at 5.

[11] D.I. 23, Ans. ¶¶ 27–28; OB Ex. E at 56–57.

[12] AB App. A-087.

[13] *Id.*

to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.[14]

D.    After closing, Leah paid an additional $1,575.00 in recording costs,[15] $4,100.00 in February 2020 for the flood insurance premium,[16] and $4,050.00 for interest and points for a June 2020 refinance.[17]  Johnson paid the monthly mortgage payments.[18]

E.    Leah and Johnson broke up in the fall of 2021.  Not surprisingly, Leah and Johnson dispute the facts underlying their breakup; those details are not material. Plaintiffs filed suit in November 2021.  They allege Johnson intentionally misled them as to his intentions to marry Leah, and as to the title on the Property.[19]  Plaintiffs ask the Court to conclude Johnson is a trustee of a resulting trust holding the Property for Leah's benefit; to impose a constructive trust and award ownership of the Property to Leah; and to compensate Plaintiffs for their funds expended improving

---

[14] *Id.*

[15] AB App. C0003.

[16] OB Ex. C at C002; OB Ex. G (providing Johnson's testimony that either Leah or another person named Tina paid the flood insurance premium).

[17] OB Ex. C at C001; OB Ex. H.

[18] AB at 7, 8.

[19] D.I. 22 ¶ 44.

the Property.[20]  Plaintiffs moved to expedite and for a preliminary injunction, but those motions were never briefed or presented to the Court.[21]

F.       In December 2021, Johnson's counsel sent Leah a letter instructing her to vacate the Property and remove her personal property or face potential trespassing charges.[22]  Thereafter, this litigation proceeded through discovery, and Plaintiffs amended their complaint in May 2023.[23]  On June 29, 2023, Leah filed her Motion for Summary Judgment Pursuant to Rule 56(a) (the "Motion") on her "claim for imposition of a resulting trust."[24]  After the parties briefed the Motion, the Court took it under advisement on November 2, 2023.[25]

G.       Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[26]  On a motion for summary judgment, "[t]he moving party bears the burden

---

[20] *Id.* at ¶ 48.

[21] D.I. 1; D.I. 4; D.I. 5.

[22] OB Ex. I.

[23] D.I. 22.

[24] OB at 2.  Leah's reply brief made plain she did not move for summary judgment on her request for a constructive trust.  RB at 8.  Christine and Padovani did not move for summary judgment.

[25] D.I. 40.

[26] Ct. Ch. R. 56(c).

of establishing that there are no issues of material fact, and the court must review all evidence in the light most favorable to the non-moving party."[27]

H.    Leah contends she is entitled to the imposition of a resulting trust over the Property because she contributed "all funds for acquisition of the [P]roperty."[28] Her Motion states she seeks to be the singular owner of the Property because she provided all funds to acquire it; but her Motion also emphasizes that she and Johnson intended that they both be owners.[29] Johnson's opposition pointed out that "Plaintiff appears to claim that she should be deemed to be the *sole* owner of the Property."[30] Leah did not refute that interpretation in reply, where she pressed the theory that she provided all preclosing acquisition costs and Johnson provided none.[31] I therefore read Leah's Motion as seeking the imposition of a resulting trust making her the sole owner of the Property, not a co-owner with Johnson.

---

[27] *Weil v. VEREIT Operating P'ship, L.P*., 2018 WL 834428, at *3 (Del. Ch. Feb. 13, 2018) (internal quotation marks omitted) (quoting *Gary v. Beazer Homes USA, Inc*., 2008 WL 2510635, at *3 (Del. Ch. June 11, 2008)).

[28] OB at 6.

[29] OB at 7–8, 9.

[30] AB at 19 (citing Am. Compl. at 10 ("Plaintiffs request that this Court . . . Find that Johnson is the trustee of a Constructive Trust and award ownership of the property to Leah Masiello.")).

[31] *See generally* RB.

I.       "A resulting trust arises from the presumed intentions of the parties and upon the circumstances surrounding the particular transaction,"[32] and the Court will impose such a trust to give effect to those presumed intentions.[33]  Resulting trusts are intended to address situations where "legal title to property is transferred, conveyed, or otherwise disposed of and it appears from the attendant circumstances or the terms of the conveyance that the parties intended that the beneficial interest in the subject property would not be enjoyed by the holder of legal title—or, in other words, that legal title and beneficial ownership would not be in the same hands."[34]

J.       A resulting trust may "arise when one party provides money to purchase property, the title to which is in the name of another."[35]  "Equity presumes, 'absent contrary evidence, that the person supplying the purchase money for property intends that its purchase will inure to his benefit, and the fact that title is in the name of another is for some incidental reason.'"[36]  "Although the plaintiff is entitled to the initial presumption of intent to secure the benefit of her payment, she nevertheless retains the burden of proof on that issue and must establish her entitlement to relief

---

[32] *Adams v. Jankouskas*, 452 A.2d 148, 152 (Del. 1982).

[33] *Wagner v. Hendry*, 2000 WL 238009, at *6 (Del. Ch. Feb. 23, 2000) (quoting *Hudak v. Procek*, 727 A.2d 841, 843 (Del. 1999)).

[34] 2 Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 16.07[c][1], at 16-106.

[35] *Id.* at 16-107.

[36] *Hudak*, 727 A.2d at 843 (quoting *Adams*, 452 A.2d at 152).

by clear and convincing evidence."[37]  "The primary factors a court must consider when determining whether or not to impose a resulting trust are the payment of the consideration and the real intent of the person who paid it."[38]  The funds must be "used directly toward the acquisition of the [p]roperty."[39]  "[A]ctual payment of the purchase price or liability incurred for it is crucial."[40]  Eschewing an opportunity to become a joint owner is inconsistent with having held an intention to be a joint owner.[41]

**IT IS ORDERED**, this 2nd day of February, 2024, that:

1.  I begin with Leah's payment of consideration.  She did not pay for any equity in the home:  the loan did not require a down payment, and Johnson has made all the mortgage payments.  After closing, Leah paid for flood insurance, and interest and points on a refinance; as Leah concedes, these are not costs of acquisition that can support a resulting trust.[42]

2.  At closing, Leah contributed funds for closing costs, recording expenses, and a home inspection.  These funds did not purchase any equity in the

---

[37] *Wagner*, 2000 WL 238009, at *6.

[38] *Id*. (quoting *Greenly v. Greenly*, 49 A.2d 126, 129 (Del. Ch. 1946))

[39] *Neumeister v. Herzog*, 2007 WL 2162556, at *4 (Del. Ch. July 12, 2007).

[40] *Wagner*, 2000 WL 238009, at *6 (quoting *Wells v. Boardley*, 1983 WL 21370 (Del. Ch. Sept. 12, 1983) (citing *Harvey v. Pennypacker*, 4 Del. 455 (1872))).

[41] *Neumeister*, 2007 WL 216556, at *4.

[42] RB at 6.

home: it is fairly debatable whether these funds went toward the "purchase price" or "used directly toward the acquisition of the property," as required to support a resulting trust.[43]

3. But I need not determine whether Leah's contributions went toward the purchase price, because she represented that she made no such contributions when she signed the Gift Letter. There, she represented she gave those funds to Johnson as a gift, to be applied toward the purchase of the Property.[44] Johnson asserts, and Leah does not dispute, that Johnson's lender required the Gift Letter in order to be satisfied as to the source and purpose of the funds, since the Property was going to be in Johnson's name.[45] By signing the Gift Letter, Leah represented to Johnson's lender that the funds were a gift to Johnson.[46] Under the Gift Letter, Leah gifted the funds to Johnson, and then those funds were applied toward the purchase of the Property. Leah did not directly contribute any funds toward that purchase.

4. In this litigation, Leah points out the funds were applied toward the purchase by means of a check from Leah to the closing agent, rather than to

---

[43] *See Neumeister*, 2007 WL 2162556, at *4; *Wagner*, 2000 WL 238009, at *6.

[44] AB App. A-087.

[45] AB at 6; *see Evans v. Flick*, 1993 WL 777341, at *3 (Del. Fam. Nov. 3, 1993) (recognizing a gift letter was needed for a third party to contribute to the purchase price "in order for the mortgage company to be satisfied as to the source and purpose of the funds").

[46] *See Krigstein v. Krigstein*, 2000 WL 145823, at *2 (Del. Super. Feb. 3, 2000) (observing that if monies subject to a gift letter were not a gift, "a representation was made to the . . . mortgagor").

9

Johnson.[47]  The mechanics of Leah's gift do not undermine her representation that she intended them as a gift to Johnson.

5.    The second element of a resulting trust is Leah's intent.  Leah has not offered any evidence that she intended to be a sole owner other than her contribution of funds, which as explained cannot support her intent to own the Property.[48]

6.    Leah also points to evidence that she intended to jointly own the Property:  the original Agreement of Sale, and the application for financing.[49]  As an initial matter, intent of joint ownership cannot support a resulting trust with one owner.  Nor can Leah support a resulting trust with her as a joint owner.  While Leah has demonstrated that she and Johnson initially intended to own the Property jointly, the undisputed facts show that when it became clear that the chosen path of financing would not permit Leah to be listed as an owner, Leah and Johnson affirmatively executed the Addendum removing Leah's name as an owner.  The Gift Letter also reflects Leah's intention to disclaim her contributions so that Johnson could own and finance the Property in his sole name.  Leah "eschewed the chance to become a joint owner" because of the financial ramifications of doing so.[50]  I cannot conclude that

---

[47] RB at 3–4.

[48] OB at 7.

[49] OB at 7–8.

[50] *Neumeister*, 2007 WL 2162556, at *4.

10

Leah intended to be a joint owner at the time she gifted funds to Johnson.[51] She intended that before she contributed the funds, but the undisputed facts demonstrate Leah did not intend to be a joint owner at the time of closing.

7. Because a resulting trust is an equitable remedy, I will close with a comment on the equities of this situation. It is apparent that Leah has suffered heartbreak, not only from the end of her relationship with Johnson, but also from the loss of the opportunity to own and live in the Property. But she has not suffered a monetary loss: she lived at the Property from December 2018 through the fall of 2021, and paid $21,262.45 in related expenses, while Johnson paid the mortgage.[52]

---

[51] The Motion does not present any evidence, or even argue, that Leah and Johnson intended to marry and to add Leah to the title in the future: the Motion is based entirely on Leah's monetary contributions, the Agreement of Sale, and the financing application. *See* OB at 7–8. Leah argues in one clause in her reply that she relied on Johnson's representation that he intended to marry her and that they would jointly own the Property. RB at 4–5. On such a crucial fact going to the element of intent, I cannot conclude Leah has met her burden on this Motion. Further, I note Leah's Amended Complaint asserts Johnson "intentionally misled" Plaintiffs by representing he intended to marry Leah. D.I. 22 at ¶¶ 44; *see id.* Under that theory, I could not conclude Johnson intended for Leah to be a joint owner in the future.

[52] *See Neumeister*, 2007 WL 2162556, at *5 ("In other words, Neumeister received consideration, in the form of a place to live, for any contributions she made toward the mortgage payments.").

11

8.     The Motion is **DENIED.**  Summary judgment on Leah's claim for a resulting trust based on her monetary contributions is entered in Johnson's favor.[53] The parties shall confer on a scheduling order for the remainder of the case.

/s/ Morgan T. Zurn
Vice Chancellor Morgan T. Zurn

---

[53] *Bank of Del. v. Claymont Fire Co. No. 1*, 528 A.2d 1196, 1199 (Del. 1987) ("When a party moves for summary judgment under Chancery Court Rule 56, and the court concludes that the moving party is not entitled to summary judgment, and the state of the record is such that the nonmoving party clearly is entitled to such relief, the judge may grant final judgment in favor of the nonmoving party. The form of the pleadings should not place a limitation upon the court's ability to do justice.").