# IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE

|                      |     |                         |
|----------------------|-----|-------------------------|
| KEITH WEBB,          | )   |                         |
|                      | )   |                         |
| Plaintiff,           | )   |                         |
|                      | )   | C.A. No. 2021-1070-MTZ  |
| v.                   | )   |                         |
|                      | )   |                         |
| KEVIN WEBB,          | )   |                         |
|                      | )   |                         |
| Defendant.           | )   |                         |

## ORDER DENYING MOTION TO DISMISS

**WHEREAS,** having considered the defendant's motion to dismiss and briefing,[1] it appears:

A.      In 1995, plaintiff Keith Webb ("Plaintiff") purchased 4 Knickerbocker Drive, Newark, Delaware (the "Property"), and has lived there since. Because Plaintiff lacked sufficient credit to obtain the mortgage, Plaintiff's parents, Harvey Jay Webb ("Father") and Hilda J. Webb ("Mother", and together with Father, "Parents") cosigned a mortgage with Plaintiff (the "1995 Mortgage"). The recorded

---

[1] All facts are drawn from the complaint, the documents integral to it, and those that are incorporated by reference. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004). I also take judicial notice of certain filings with the Register of Wills. *Arot v. Lardani*, 2018 WL 5430297, at *1 n.6 (Del. Ch. Oct. 29, 2018).

deed to the Property is in the name of Parents as husband and wife and Plaintiff, as tenants in common.[2]

B.     Simultaneously with that deed, Parents and Plaintiff executed an agreement dated October 27, 1995 (the "Agreement"), in which Parents made two promises:

> [1] H. Jay Webb and Hilda J. Webb hereby contract to amend their respective wills to reflect that their interest in 4 Knickerbocker Drive shall be devised to Keith J. Webb should he survive them, and to Brenda D. Cameron, should Keith J. Webb not survive them.

> [2] H. Jay Webb and Hilda J. Webb hereby agree that at such time as the [1995 M]ortgage . . . to which they are co-signers should be paid off, they will convey their interest in [the Property] to Keith J. Webb.[3]

C.     Additionally, the Agreement provided:

> This agreement reflects the parties['] intent that Hilda J. and H. Jay Webb are co-signers only on the Note and the Mortgage aforementioned; That [sic] Keith J. Webb and Brenda D. Cameron will supply the funds to purchase [the Property], have the right to live there and the duty to maintain the premises and to pay the monthly mortgage payments.[4]

Plaintiff pleads that Parents "never wanted to own the Property and merely viewed the fact that they were on the title as an accommodation to Plaintiff, their son, in order to enable him to obtain a mortgage on the Property."[5]

---

[2] Docket Item ("D.I.") 1 [hereinafter "Compl."], Ex. A.

[3] Compl. Ex. B.

[4] *Id.*

[5] Compl. ¶ 5.

D.    Father passed away on August 28, 2000.  Father's interest in the Property passed to Mother, without apparent complaint by Plaintiff.[6]

E.    Plaintiff refinanced the Property "on more than one occasion."[7]  The most recent loan, and the only existing loan secured by the Property, was initiated in 2008, and the signatories are Plaintiff and Mother.  Neither Parent conveyed their interest in the Property to Plaintiff following a refinancing.

F.    Mother passed away on August 11, 2018.[8]  Contrary to the Agreement, Mother did not amend her will to devise her interest in the Property to Plaintiff:  she devised all her property, including real property, in equal shares unto Plaintiff and his brother, defendant Kevin Webb ("Defendant").[9]  In accordance with Mother's will, Plaintiff, represented by counsel, was the executor of Mother's estate.[10]  On September 19, 2019, Plaintiff's counsel submitted a Real Estate Memo indicating Plaintiff and Defendant were each entitled to half of Mother's 50% share of the Property.[11]  That same day, Plaintiff's counsel also filed a letter stating:

---

[6] New Castle County Register of Wills ["ROW"], Folio No. 123148, D.I. 1.

[7] Compl. ¶ 6.

[8] ROW Folio No. 170501 AF, D.I. 1 at Death Certificate (Certified).

[9] ROW Folio No. 170501 AF, D.I. 4 at THIRD.

[10] ROW Folio No. 170501 AF, D.I. 1 at Letter; ROW Folio No. 170501 AF, D.I. 3.

[11] ROW Folio No. 170501 AF, D.I. 12 at 2.

3

Please be advised that we have stated the ownership interests on the [P]roperty . . . for convenience only on the inventory list and that there is a dispute over the actual percentage ownership of that property. I am hopeful that the parties in interest can reach an agreement but, if not, we do intend to assert our client[']s rights to the [P]roperty.[12]

The estate was closed on September 28, 2021.[13]

G. Plaintiff and Defendant did not reach an agreement concerning the Property, and Plaintiff filed this action on December 9, 2021. In his complaint (the "Complaint"), Plaintiff pleads that "[b]ecause the Property was never deeded by his parents to Plaintiff and because his parents failed to revise their wills as promised, Defendant is now claiming an interest in the Property which he contends was received by him through the estate of [Mother]."[14] Plaintiff presses one count titled "Quiet Title and Specific Performance," by which he seeks a declaration that Defendant has no right to the Property and an order compelling Defendant to transfer title to Plaintiff.[15]

H. On February 23, 2022, Defendant moved to dismiss under Court of Chancery Rule 12(b)(6) (the "Motion"), arguing both 12 *Del. C.* § 2102 and the

---

[12] ROW Folio No. 170501 AF, D.I. 11.

[13] ROW Folio No. 170501 AF, D.I. 25.

[14] Compl. ¶ 9.

[15] *Id.* ¶¶ 10–13; *id.* at Wherefore ¶¶ 1–2.

4

doctrine of laches bar Plaintiff's claim.[16] The parties briefed the Motion,[17] but were quiet thereafter, failing to request oral argument or consideration on the papers; the Court took the Motion under advisement on the papers on March 15, 2023.[18]

    I.   The standard governing a motion to dismiss under Court of Chancery Rule 12(b)(6) is familiar:

> (i) [A]ll well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[19]

The touchstone "to survive a motion to dismiss is reasonable 'conceivability.'"[20] This standard is "minimal"[21] and plaintiff-friendly.[22] "Indeed, it may, as a factual matter, ultimately prove impossible for the plaintiff to prove [its] claims at a later stage of a proceeding, but that is not the test to survive a motion to dismiss."[23]

---

[16] D.I. 6 at Mot. to Dismiss; D.I. 6 at Op. Br.

[17] D.I. 6 at Op. Br.; D.I. 10 at Ans. Br.; D.I. 11 at Reply Br.

[18] D.I. 13.

[19] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (footnotes omitted) (quoting *Kofron v. Amoco Chems. Corp.*, 441 A.2d 226, 227 (Del. 1982)).

[20] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[21] *Id.* at 536.

[22] *E.g.*, *Clouser v. Doherty*, 175 A.3d 86, 2017 WL 3947404, at *9 (Del. 2017) (TABLE); *In re USG Corp. S'holder Litig.*, 2021 WL 930620, at *3–4 (Del. Ch. Mar. 11, 2021); *In re Trados Inc. S'holder Litig.*, 2009 WL 2225958, at *8 (Del. Ch. July 24, 2009).

[23] *Cent. Mortg. Co.*, 27 A.3d at 536.

Despite this forgiving standard, the Court need not accept conclusory allegations unsupported by specific facts or draw unreasonable inferences in favor of the nonmoving party.[24] "Moreover, 'the court is not required to accept every strained interpretation of the allegations proposed by the plaintiff.'"[25]

J.     Section 2102, in relevant part, reads:

(a) All claims against a decedent's estate which arose before or at the death of the decedent, including claims of the State and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort or other legal basis, except debts of which notice is presumed pursuant to § 2103 of this title, if not barred earlier by other statute of limitations, are barred against the estate, the personal representative and the heirs and devisees of the decedent unless presented as provided in § 2104 of this title within 8 months of the decedent's death whether or not the notice referred to in § 2101 of this title has been given.

(b) All claims against a decedent's estate which arise after the death of the decedent, including claims of the State or any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort or other legal basis, unless presented in accordance with § 2104 of this title, are barred against the estate, the personal representatives and the heirs and devisees of the decedent, as follows:

(1)  A claim based on a contract with the personal representative, within 6 months after performance by the personal representative is due;

(2)  Any other claim, within 6 months after it arises.[26]

---

[24] *E.g.*, *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009).

[25] *Trados*, 2009 WL 2225958, at *4 (quoting *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006)).

[26] 12 *Del. C.* § 2102(a)–(b).

6

Section 2102 is a non-claim statute, and therefore terminates an estate's capacity to be sued after the stated period.[27] Claims that are not timely presented are forever barred against the estate.[28]

**IT IS ORDERED** this 10th day of July, 2023, that:

1. I read Plaintiff's claim to be sourced in three theories: two breaches of the Agreement, and an equitable theory. The first breach of contract theory is based on the failure to convey Parents' interest in the Property to Plaintiff when the 1995 Mortgage enumerated in the Agreement was paid off. Any claim brought under this theory arose at some time before Mother's death, and is therefore governed by Section 2102(a).[29] Because Plaintiff filed this action more than eight months after Mother's death, a claim based on that theory is untimely.[30]

---

[27] *Sherman v. State*, 133 A.3d 971, 979–81 (Del. 2016).

[28] *Id.* at 980 (citing *Cummings v. Estate of Lewis*, 2013 WL 2987903 (Del. Ch. June 17, 2013)).

[29] The Complaint is not clear as to when this claim arose, and the parties do not expressly address the issue. The Complaint states that the mortgage on the Property was refinanced in 2008, but neither party addresses whether that refinancing satisfied the condition of paying off the specified 1995 Mortgage, thus triggering Mother's obligation to convey her interest in the Property to Plaintiff.

[30] At times, Plaintiff's answering brief in opposition to the Motion appears to argue that there was a breach of the Agreement, but that Plaintiff has not yet completed performance under the Agreement. To the extent this is Plaintiff's theory, it is unripe, and dismissed on those grounds. *See Envo, Inc. v. Walters*, 2009 WL 5173807, at *4 n.10 (Del. Ch. Dec. 30, 2009) ("The issue of subject matter jurisdiction is so crucial that it may be raised at any time before final judgment and by the court *sua sponte*.").

2.     The second contractual theory is based on Mother's failure to amend her will to devise her interest in the Property to Plaintiff.  There is no dispute that the Agreement is, in part, a contract to amend a will.  Such contracts "implicate special concerns for the court . . . .  Foremost among them is the potential to obstruct the prompt settlement of decedents' estates—a clear policy goal of our statutory law."[31]  A claim for a breach of a contract to amend a will typically, except in circumstances not present here, arises upon the death of the decedent.[32]  Such a claim is therefore governed by Section 2102(b).  Plaintiff did not submit a claim against Mother's estate within six months of her death; indeed, his counsel's letter of September 29, 2019, invoking Plaintiff's purported "rights to the [P]roperty," was filed over twelve months after Mother's death.[33]  A claim based on that theory is untimely as well.

3.     Plaintiff attempts to save these breach of contract theories by arguing they are not governed by Section 2102 because Mother's interest in the Property passed directly to the heirs, not to the estate.  It is true that under Delaware law, property passes directly to the heirs.[34]  But Plaintiff is seeking to enforce a contract

---

[31] *Eaton v. Eaton*, 2005 WL 3529110, at *5 (Del. Ch. Dec. 19, 2005).

[32] *Id.* at *6.

[33] Instead, over twelve months after Mother's death, Plaintiff's counsel submitted the Real Estate Memo to the Register of Wills attesting that Plaintiff and the decedent were each entitled to a 50% share of the Property.  ROW Folio No. 170501 AF, D.I. 12, sch. A.

[34] *See Moore v. Davis*, 2011 WL 3890534, at *2 (Del. Ch. Aug. 29, 2021).

8

he had with Parents, and he has made no showing that the promise is enforceable against any successors or heirs.

4. Plaintiff also contends that Section 2102 does not apply because the purpose of Section 2102 is to direct the presentation of claims to the personal representative, and that because he was the personal representative, he was duly aware of his claim against Mother's estate. Not so: the purpose of Section 2102 is the prompt administration of estates.[35] Plaintiff is not excused from that statutory directive because he was personal representative: it is his responsibility to administer the estate promptly. Nothing in t plain language of Section 2102 excuses personal representatives.

5. Plaintiff's third theory appeals to this Court's equitable powers. I read the Complaint to be asserting an equitable claim seeking the imposition of a resulting trust based on an understanding between Plaintiff and Parents. "A resulting trust arises from the presumed intentions of the parties and upon the circumstances surrounding the particular transaction,"[36] and the Court will impose such a trust to give effect to those presumed intentions.[37] Resulting trusts are intended to address situations where "legal title to property is transferred, conveyed,

---

[35] *See Sherman*, 133 A.3d at 980.

[36] *Adams v. Jankouskas*, 452 A.2d 148, 152 (Del. 1982).

[37] *Wagner*, 2000 WL 238009, at *6 (quoting *Hudak v. Procek*, 727 A.2d 841, 843 (Del. 1999)).

9

or otherwise disposed of and it appears from the attendant circumstances or the terms of the conveyance that the parties intended that the beneficial interest in the subject property would not be enjoyed by the holder of legal title—or, in other words, that legal title and beneficial ownership would not be in the same hands."[38]

6.     A resulting trust may "arise when one party provides money to purchase property, the title to which is in the name of another."[39] Under such circumstances, the Court may impose a resulting trust where: (1) the person seeking to establish the trust paid the consideration for the property at issue; (2) the parties intended for the payor to be the equitable owner; and (3) "the payment made or liability incurred [is] . . . part of the original transaction of purchase and [was not made] pursuant to any subsequent agreement between the parties."[40] "Equity presumes, 'absent contrary evidence, that the person supplying the purchase money for property intends that its purchase will inure to his benefit, and the fact that title is in the name of another is for some incidental reason.'"[41]

---

[38] 2 Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 16.07[c][1], at 16-106.

[39] *Id.* at 16-107.

[40] *Wagner*, 2000 WL 238009, at *6 (internal quotation marks omitted) (citing *Greenly v. Greenly*, 49 A.2d 126, 129 (Del. Ch. 1946); and then quoting *Wells v. Boardley*, 1983 WL 21370, at *2 (Del. Ch. Sept. 12, 1983)).

[41] *Hudak v. Procek*, 727 A.2d 841, 843 (Del. 1999) (quoting *Adams*, 452 A.2d at 152).

10

7.     The Complaint pleads that Plaintiff paid the purchase price for the Property,[42] and so he is entitled to a presumption that he and Parents intended the Property for his benefit, and that Parents were on the deed for an incidental reason.[43] The Complaint also pleads facts consistent with the view that Parents intended for Plaintiff to have equitable ownership of the property, including the fact Plaintiff was the sole occupant for over twenty-seven years and that he paid all expenses relating to the Property. Defendant has not argued that these facts are insufficient for Plaintiff's equitable claim to survive a motion to dismiss.

8.     The imposition of a resulting trust would preclude the application of Section 2102, and therefore Section 2102 does not warrant dismissal at this stage.[44] But a claim seeking the imposition of a resulting trust can be subject to a laches defense.[45] Plaintiff's claim seeking an equitable trust is an equitable claim seeking an equitable remedy that has no legal analog.[46] Thus, there is no analogous statute of limitations for the Court to look to, and a traditional laches analysis is

---

[42] The Agreement states that Plaintiff and his then-spouse Brenda Cameron supplied the funds to purchase the Property. They have since divorced, and the Complaint does not expressly address Cameron's rights in the Property, if any. At this stage, I do not view the possibility that Cameron paid part of the purchase price as affecting the analysis.

[43] *Hudak*, 727 A.2d at 843.

[44] *Adams*, 452 A.2d at 154.

[45] *See, e.g.*, *id.* at 157–58.

[46] *Quill v. Malizia*, 2005 WL 578975, at *15 n.49 (Del. Ch. Mar. 4, 2005).

11

applicable.[47]  That analysis is fact-intensive, and is more appropriate at a later stage of the proceedings, when the record is further developed.[48]

9.    Defendant's Motion is **DENIED**.  The parties should submit a stipulated case scheduling order.

/s/ Morgan T. Zurn
Vice Chancellor

---

[47] *See id.*; *Hudak*, 727 A.2d at 843.

[48] *See, e.g.*, *Calesa Assocs., L.P. v. Am. Cap., Ltd.*, 2016 WL 770251, at \*15 (Del. Ch. Feb. 29, 2016) ("I consider the fact-intensive laches analysis—in light of the fact that that the analogous statute of limitations had not run at the filing of the Complaint—to be better deferred to a time when the record is more developed.").